

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LECAT'S VENTRILOSCOPE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 C 5298 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| MT TOOL AND MANUFACTURING, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lecat's Ventriloscope filed this suit against Defendant MT Tool & Manufacturing for alleged infringement of U.S. Patent No. 7,645,141 ("the '141 Patent"). (R. 1, Compl.) Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (R. 23, Def.'s Mot. to Dismiss.) For the reasons set forth below, Defendant's motion to dismiss is denied.

## BACKGROUND

The '141 Patent relates generally to auscultation, which it describes as the "act of listening to sounds within the body as a method of diagnosis," and more specifically relates to an "arrangement for auscultation training." (R. 1-1, '141 Patent at [54] (Title), 1:13-14, 1:41-42.) The patent specification explains that "[a] stethoscope is an example of an auscultation device" as it may be used to "listen to internal sounds in the human body, such as for example heart sounds, breathing (breath sounds), intestinal noises, and blood flow in arteries and veins." (*Id.* at 1:14-18.) The patent discloses an arrangement for auscultation training that "provides for the transmission of audio signals to an auscultation device for medical simulation." (*Id.* at 1:42-45.) Generally speaking, the patent describes a device (such as a stethoscope) that is adapted for use

in auscultation training by embedding a speaker which plays sounds that are sent to it by a remote transmitter, presumably simulating internal body sounds. (*See, e.g.*, *id.* at 4:13-25, Fig. 2.) The patent also describes methods for using such a device in auscultation training. Claim 1 of the patent, for example, reads:

> 1. An arrangement for auscultation training, comprising:
>> a signal generator capable of generating an audio signal representing at least one sound, the signal generator being controlled by a human operator, wherein the human operator plays one or more appropriate audio files according to a user's placement of a stethoscope headpiece on a patient;
>>
>> a transmitter associated with the device for transmitting an audio signal corresponding to the at least one sound;
>>
>> an auscultation device, comprising a stethoscope, remote from the transmitter, the auscultation device comprising:
>>
>> a receiver adapted to receive the audio signal from the transmitter; and
>>
>> a speaker adapted to audibly communicate the audio signal received by the receiver to the user.

(*Id.* at 8.)

Plaintiff alleges that Defendant is liable for infringement by virtue of "making and selling a product, the MT S-Scope (the 'S-Scope'), that, when used by an end user for the specific purpose and in the specific manner promoted by [Defendant], infringes the '141 Patent." (R. 1, Compl. ¶ 9.) Plaintiff alleges that end users of the S-Scope directly infringe claims 1, 8, 9, 10, 12, and 14 of the '141 Patent, in violation of 35 U.S.C. § 271(a), when utilizing the S-Scope. (*Id.* ¶¶ 9-10, 18-23.) Plaintiff further alleges that Defendant actively induces such infringement, in violation of 35 U.S.C. § 271(b), by, among other things, "making and selling the S-Scope, . . . making the S-Scope [iPhone] App . . . available on the Apple iTunes store as a free download, and actively promoting the S-Scope as an auscultation training device." (*Id.* ¶ 16.) The complaint

includes a claim chart mapping elements of each asserted patent claim to evidence Plaintiff relies on to support its allegations. (*See id.* at 3-9.)

Plaintiff alleges that on January 12, 2015, it sent a cease-and-desist letter to Defendant, "inform[ing] [Defendant] of the existence of the '141 Patent, provid[ing] a copy of the '141 Patent to [Defendant], indicat[ing] that the manufacture and sale of the S-Scope infringed the '141 Patent, and request[ing] that [Defendant] cease and desist in making and selling the S-Scope." (*Id.* ¶ 12.) Plaintiff alleges that Defendant consequently "had actual knowledge of the '141 Patent" during the relevant time period, "beginning when [Defendant] was told of the existence of the '141 Patent and continuing to the present." (*Id.* ¶ 24.) Plaintiff further alleges that "[d]uring the relevant time period, [Defendant] knowingly induced infringement of the '141 Patent" and "specifically intended to encourage infringement by purchasers and users of the . . . S-Scope." (*Id.* ¶¶ 25-26.)

Defendant moves to dismiss pursuant to Rule 12(b)(6), raising three arguments. First, Defendant argues that Plaintiff has not plausibly alleged that Defendant's accused product (the S-Scope) includes an "auscultation device" as required by every asserted claim of the '141 Patent. (R. 23, Def.'s Mot. to Dismiss at 1-2, 7-8.) Second, Defendant argues that Plaintiff has not plausibly alleged that the use of the S-Scope (by end users and/or customers) employs a "user," a "[human] operator," and a "patient," as also recited by every claim. (*Id.* at 1-2, 8-11.) Third, Defendant argues that Plaintiff has not plausibly alleged that Defendant has the specific intent required to find it liable for inducing infringement. (*Id.* at 1-2, 11-13.) Plaintiff argues in response that it has adequately alleged factual content to state a claim that is "plausible on its face" and that by demanding more, Defendant is arguing that Plaintiff "needs to prove its case at the pleading stage." (R. 27, Pl.'s Resp. at 2-3.)

3

Defendant also argues briefly in a footnote that all claims of the '141 Patent should be found indefinite under 35 U.S.C. § 112(b) for simultaneously claiming "both an apparatus and the method steps of using the apparatus," in violation of the rule against so-called mixed-mode or hybrid patent claims. (R. 23, Def.'s Mot. to Dismiss at 4 n.2.) Plaintiff offered no response to Defendant's argument, perhaps because the argument was raised only in a single footnote, and Defendant did not further address the issue in its Reply. This argument is addressed in turn below.

## LEGAL STANDARDS

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chi.*, 810 F.3d 476, 480-81 (7th Cir. 2016), *cert. denied*, 2016 WL 3186107 (U.S. Nov. 28, 2016). The Court may consider the complaint itself, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## ANALYSIS

### I. Direct Infringement - "Auscultation Device"

Defendant argues first that Plaintiff has failed to state a claim of direct infringement because it has not plausibly alleged that the allegedly infringing product, the S-Scope, includes an "auscultation device" as recited in the asserted claims of the '141 Patent. (R. 23, Def.'s Mot. to Dismiss at 1, 7-8.)

U.S. Code Title 35, Section 271(a) governs direct patent infringement and provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). To prevail on its infringement claim, Plaintiff will have to show that the accused S-Scope meets the "auscultation device" limitation of the claims, because "[i]nfringement occurs when a properly construed claim reads on the accused product." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1334 (Fed. Cir. 2006);[1] *see also LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1325 (Fed. Cir. 2016) ("Direct infringement of an apparatus claim requires that each and every limitation set forth in a claim appear in an accused product." (citation and quotation marks omitted)). However, Plaintiff does not need to prove its case at the pleading stage. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.* ("*Bill of Lading*"), 681 F.3d 1323, 1339-40 (Fed. Cir. 2012) (observing that the *Twombly/Iqbal* pleading standard "does not mean . . .

---

[1] While U.S. Court of Appeals for the Seventh Circuit precedent governs the standards applicable to Defendant's motion to dismiss, the law of the U.S. Court of Appeals for the Federal Circuit is controlling insofar as it defines the substantive elements of direct and induced infringement. *See Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1381 (Fed. Cir. 2002) (issues that "pertain[] to patent law, bear[] an essential relationship to matters committed to [the Federal Circuit's] exclusive control by statute, or clearly implicate[] the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction" are governed by Federal Circuit law).

[plaintiff] must prove its case at the pleading stage" and reversing Rule 12(b)(6) dismissal of induced infringement claim).

The Court finds that Plaintiff has sufficiently alleged that the accused S-Scope includes an "auscultation device" as recited in the asserted claims of the '141 Patent. In the claim chart incorporated in the complaint, Plaintiff alleges in relation to claims 1 and 12 (the only independent claims of the patent, from which all other claims depend) that "the S-Scope includes a stethoscope" and that "[t]he stethoscope is an auscultation device." (R. 1, Compl. at 5, 8.) The complaint also quotes excerpts of Defendant's website that repeatedly reference a "stethoscope" in connection with the S-Scope, such as the descriptions stating that "[o]nce a student places *the stethoscope* on the appropriate listening post the instructor / SP activates the sound file" and that "[t]he student hears the sounds through *the stethoscope*." (*Id.* at 5 (emphases added).) Given that the '141 Patent's specification identifies a stethoscope as an example of an auscultation device, (R. 1-1, '141 Patent at 1:14-18), and given Plaintiff's allegations that Defendant's own website describes the S-Scope as utilizing a "stethoscope," it is at least plausible that the S-Scope includes an "auscultation device," as Plaintiff alleges.

Defendant argues that this inference is not plausible, asserting that as a matter of fact the S-Scope uses only simulation stethoscopes—"mockups or 'dummy' devices that may physically appear as a stethoscope" but which "contain no functioning diaphragm or other implements for sensing sounds that arise within the human body organs" and are consequently "not capable of performing 'the act of listening to sounds arising within organs.'" (R. 23, Def.'s Mot. to Dismiss at 7-8.) Defendant reasons that an "auscultation device," as that term is used in the claims of the '141 Patent, must be capable of performing the act of listening to sounds arising within organs, and that since the S-Scope's dummy stethoscopes do not have that capability, Plaintiff's direct

6

infringement claim is not plausible. (*Id.*) Although Defendant's argument is couched in the language of pleading standards—i.e., that Plaintiff has not "plausibly allege[d]" factual content (*id.* at 1, 7-8, 11-12)—its argument, at bottom, is that the accused S-Scope device does not infringe under a proper construction of the term "auscultation device" because the S-Scope uses only simulation stethoscopes, and "auscultation device" in the '141 Patent only covers devices (such as real stethoscopes) that are capable of performing the act of listening to sounds arising within organs.

The U.S. Court of Appeals for the Federal Circuit has cautioned against construing claim language to resolve, at the pleading stage, what are effectively non-infringement arguments. Specifically, in reversing a district court's grant of a Rule 12(b)(6) motion to dismiss, the Federal Circuit has stated that when deciding such a motion, a court should not "base[ ] its assessment of the 'reasonableness' of a given inference of infringement on a narrow construction of the patent's claims," in part because "claim construction at the pleading stage—with no claim construction processes undertaken"—is "inappropriate." *Bill of Lading*, 681 F.3d at 1343 n.13; *see also Novartis Pharm. Corp. v. Actavis, Inc.*, No. 12-366-RGA, 2012 WL 6212619, at *7-8 (D. Del. Dec. 5, 2012) (citing *Bill of Lading* and discussing rationale for not resolving claim construction and non-infringement arguments at pleading stage). In line with this principle, district courts have "repeatedly held that if a court is required to construe the meaning of claim terms and perform an infringement analysis in order to resolve a motion to dismiss . . . the motion should be denied, because this type of analysis is inappropriate at the pleading stage." *Id.* at *7 (collecting cases). "These courts have reasoned that it is unsuitable to engage in such an inquiry at the pleading stage, because claim construction can be illuminated by the consideration of extrinsic evidence-evidence that is often not before the court at that stage." *Id.* These courts

7

have also "note[d] that a claim construction analysis at the pleading stage does not benefit from the procedures (including . . . the exchange of proposed constructions and extensive briefing) that typically precede a *Markman* hearing."[2] *Id.*

While Defendant's argument about the correct construction of the term "auscultation device" and its assertion that the S-Scope stethoscopes are just "dummy" devices may ultimately have merit, to accept Defendant's arguments would require the Court to do exactly what the Federal Circuit has cautioned against: the Court would have to adopt, at the pleading stage, a construction of the claim term "auscultation device" that is limited to devices capable of the act of listening to sounds arising within organs. The Court would then have to infer, from the limited record before it, that the S-Scope device in fact uses only dummy or simulation stethoscopes that are not capable of listening to sounds within organs.

As previously noted, Plaintiff has alleged that "the S-Scope includes a stethoscope" and that "[t]he stethoscope is an auscultation device." (R. 1, Compl. at 5, 8.) It would be inappropriate to construe claims terms or engage in infringement analysis at the pleading stage to conclude otherwise. *See Bill of Lading*, 681 F.3d at 1343 n.13. The Court therefore concludes that Plaintiff has plausibly alleged that the accused S-Scope product includes an "auscultation device."

## II. Direct Infringement — "User," "[Human] Operator," and "Patient" Limitations

Defendant next argues that Plaintiff has failed to state a claim of direct infringement because, in its view, the asserted claims of the '141 Patent all require the involvement of three

---

[2] A *Markman* hearing is "a hearing to construe the claims pursuant to *Markman v. Westview Instruments, Inc.*" *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1328 (Fed. Cir. 2007). *Markman* held that the interpretation and construction of patent claim terms is a matter of law and the exclusive province of the court, not the jury. *See Markman*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

8

people and Plaintiff has not plausibly alleged that customers' use of the accused S-Scope employs three distinct persons. (R. 23, Def.'s Mot. to Dismiss at 1, 8-11.) Specifically, Defendant argues that the claims' recitation of a "user," a "[human] operator,"[3] and a "patient" requires the involvement of three distinct persons for the end use of the S-Scope to directly infringe, namely "a human operator (of the signal generator), a user (placing an auscultation device), and a patient (on which the auscultation device is placed)." (R. 23, Def.'s Mot. to Dismiss at 8-9.) Defendant points out that even the excerpts of its website quoted in the complaint state that "[s]tandardized *patients* simply tap the appropriate listening post icon to play the corresponding sound through the *student's* MT S-Scope," arguing that this "makes it clear that there are only two persons involved in the intended and/or directed use of [the S-Scope], namely a patient and a student." (*Id.* at 9-10 (emphases added).) Plaintiff argues by contrast that the claim language in the '141 Patent referring to a "user," a "[human] operator," and a "patient" merely "define[s] three *roles*" and that "nothing in the claim language or the specification of the '141 Patent precludes a single individual from performing multiple roles." (R. 27, Pl.'s Resp. at 8 (emphasis added).)

To prevail on its claim that end users' use of the S-Scope directly infringes, Plaintiff will ultimately have to prove that such use involves a "user," a "[human] operator," and a "patient" as recited in the patent claims. *See LifeNet Health*, 837 F.3d at 1325. However, as previously discussed, Plaintiff does not need to prove its case at the pleading stage. *Bill of Lading*, 681 F.3d at 1339. The Court finds that Plaintiff has plausibly alleged that the end use of an S-Scope involves a "user," a "[human] operator," and a "patient." First—as with its argument regarding "auscultation device"—accepting Defendant's argument would require the Court to prematurely

---

[3] Claim 1 recites a "human operator" whereas claim 12 recites simply an "operator." The Court assumes for purposes of this motion that these terms are equivalent.

9

construe claim language and evaluate a non-infringement argument at the pleading stage. *See Bill of Lading*, 681 F.3d at 1343 n.13. In particular, the Court would have to (1) construe the relevant claim language to be limited to three-person use and (2) infer from the limited record the Court has before it that end users' instructed and/or intended use of the S-Scope in fact only involves two people. Second, even assuming the asserted claims require three-person use as Defendant suggests, Plaintiff plausibly alleges that the intended and/or directed use of the S-Scope involves three people. Quoting from Defendant's website, the complaint alleges that "[o]nce a *student* places the [MT S-Scope] stethoscope on the appropriate listening post the *instructor / SP* [standardized patient] activates the sound file." (R. 1, Compl. at 4-5, 7-8 (emphases added).) These excerpts from Defendant's website allow a plausible inference that a "student," an "instructor," and an "SP" (standardized patient)—three separate persons—are involved in using the S-Scope. The complaint's allegation that "the standardized patient *or a teacher*, either of which may be the operator-observer, taps the appropriate icon for a sound file" to play sounds in the S-Scope, (R. 1, Compl. at 8 (emphasis added)), likewise allows a plausible inference that three people—a student, a teacher, and a standardized patient—are all involved in customers' instructed and/or intended use of the S-Scope.

The Court finds that Plaintiff has plausibly alleged that the end use of the S-Scope employs a "user," a "[human] operator," and a "patient," and it would be inappropriate to construe claims terms or engage in infringement analysis at the pleading stage to conclude otherwise. *See Bill of Lading*, 681 F.3d at 1343 n.13.

### III. Induced Infringement — Intent and Knowledge

Defendant argues last that Plaintiff has "failed to plausibly allege how Defendant has the requisite specific intent for inducement to infringe." (R. 23, Def.'s Mot. to Dismiss at 1-2; *see also id.* at 11-13.) Title 35, Section 271(b) governs induced infringement and provides that

10

"[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Induced infringement requires, among other things, proof that "the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Info–Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) (citation omitted). At the pleading stage, Plaintiff must allege factual content "plausibly showing that [Defendant] specifically intended [its] customers to infringe the ['141] patent and knew that the customer's acts constituted infringement." *Bill of Lading*, 681 F.3d at 1339. Again, however, "[t]his does not mean . . . that [Plaintiff] must prove its case at the pleading stage." *Id.*

The Court finds that Plaintiff has plausibly alleged that Defendant specifically intends for its customers to use the S-Scope in the manner that Plaintiff alleges is infringing, and that Defendant knows that its customers' use of the S-Scope in that manner infringes. Relevant to specific intent, the complaint alleges that Defendant "is engaged in the business of making and selling a product, the S-Scope . . . that, when used by an end user for the specific purpose and in the specific manner promoted by [Defendant], infringes the '141 Patent." (R. 1, Compl. ¶ 9.) The complaint also alleges that Defendant "actively promotes [the S-Scope] to end users [as] an arrangement for auscultation training," that Defendant teaches its customers to use the S-Scope in an infringing manner through "demonstrations . . . at trade shows and descriptions on its web site", and that the S-Scope "has no non-infringing use." (*Id.* ¶¶ 4, 9-10.) Based on these facts, Plaintiff alleges that Defendant "specifically intended to encourage infringement by purchasers and users" of the S-Scope. (*Id.* ¶ 26.)

Defendant argues that it is not plausible to infer specific intent from these allegations because—as evidenced by the portions of its website excerpted and cited in the complaint—it only instructs two-person use of the S-Scope, which Defendant asserts does not infringe. (R. 23,

11

Def.'s Mot. to Dismiss at 12-13.) Defendant reasons that because it only instructs or encourages use in a non-infringing two-person manner, it is not plausible to infer the specific intent required to induce infringement. This argument is not persuasive.

First, Defendant's argument begs the question whether the claims actually require three distinct people when they recite a "user," a "[human] operator," and a "patient." If those claim elements refer instead to roles that can be fulfilled by fewer than three people, as Plaintiff argues, then even the two-person use instructed by Defendant's website might infringe. In other words, Defendant's argument depends on the premise that only three-person use of the S-Scope can infringe, which the Court declines to decide at the pleading stage. *See Bill of Lading*, 681 F.3d at 1343 n.13; *Novartis Pharm. Corp.*, 2012 WL 6212619, at *7-8. Second, even if the Court were to accept this premise, Plaintiff has plausibly alleged factual content, including quotes taken directly from Defendant's website, allowing an inference that three people—a student, a patient, and an instructor—are involved in the intended and/or instructed use of the S-Scope.

As to Defendant's knowledge that its customers' acts constituted alleged infringement, Plaintiff alleges that it sent Defendant a cease-and-desist letter in January 2015 in which Plaintiff informed Defendant of the existence of the '141 Patent, provided a copy of the patent to Defendant, asserted that the manufacture and sale of the S-Scope infringed, and requested that Defendant cease and desist in making and selling the S-Scope. (R. 1, Compl. ¶¶ 11-12.) The complaint also alleges that counsel for Defendant responded to the cease and desist letter, "reject[ing] [Plaintiff's] assertion of infringement and refus[ing] to cease and desist from making and selling the S-Scope." (*Id.* ¶ 13-14.) Based on these facts, Plaintiff alleges that Defendant "knowingly induced infringement of the '141 Patent." (*Id.* ¶ 25.) These allegations allow a plausible inference that Defendant knew—for at least the period of time beginning with its

receipt of the cease-and-desist letter—of the '141 Patent and that its customers' use of the S-Scope infringed.

Plaintiff correctly observes in its opposition that courts in this District have previously found that induced infringement was plausibly alleged in pleadings less detailed than the complaint here. (R. 27, Pl.'s Resp. at 10-11.) In *Radiation Stabilization Solutions LLC v. Accuray Inc.*, for example, the plaintiff alleged "on information and belief that [the defendants] are at least as of the date of the filing of this complaint inducing infringement of the [asserted] patent" and that "the [accused] machine infringes the [asserted] patent." No. 11-CV-07700, 2012 WL 3621256, at *4 (N.D. Ill. Aug. 21, 2012) (internal quotation marks omitted). The court concluded from these limited allegations that "it is reasonable to infer that the [accused] machine incorporates a system that infringes the [asserted] patent, and that defendants intend to induce the infringement because they . . . now know of the infringing nature of the machine and continue to sell, use, or encourage others to use the machine."[4] *Id.*

Similarly, in *Trading Technologies Int'l, Inc. v. BCG Partners, Inc.*, the plaintiff alleged that the defendant "induced others to infringe its patents by promoting the infringing products and instructing its customers on how to use those products in infringing ways." No. 10 C 715, 2011 WL 1706136, at *4 (N.D. Ill. May 5, 2011). The court found it "reasonable to infer, at the

---

[4] Defendant argues that *Radiation Stabilization* is "off point" because the court there relied on now-abrogated Form 18 in the Federal Rules Appendix, a barebones form complaint for patent infringement to measure the sufficiency of the plaintiff's allegations. (R. 28, Def.'s Reply at 8-9.) Defendant is correct that as of December 1, 2015, Form 18 can no longer be used. *See, e.g., Atlas IP, LLC v. City of Naperville*, No. 15 C 10744, 2016 WL 3907029, at *2 (N.D. Ill. July 19, 2016) ("On December 1, 2015, amendments to the [Rules] took effect, abrogating the Forms Appendix, including Form 18 which previously provided the minimum standard for pleading infringement in patent cases."). But the court in *Radiation Stabilization* only relied on Form 18 to measure the sufficiency of <u>direct</u> infringement allegations, not the <u>indirect</u> infringement allegations, *see* 2012 WL 3621256, at *4, and rightly so because allegations of indirect infringement have never properly been measured by Form 18. *See Bill of Lading*, 681 F.3d at 1336 ("Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement.").

motion to dismiss stage, that by selling infringing products and showing customers how to use those products, [the defendant] intended those customers to infringe on [the plaintiff's] patents." *Id.* The Court also observed that the defendant appeared to "want[] [the plaintiff] to plead *how* those materials induce infringement, but [the plaintiff] does not need to do that at this point." *Id.* (emphasis in original). The complaint here alleges more detail than the complaints at issue in either *Radiation Stabilization* or *Trading Technologies*, including allegations concerning Plaintiff's cease-and-desist letter, which reinforces the conclusion that Defendant's knowledge of alleged infringement has been plausibly alleged.

Because the Court finds that Plaintiff has plausibly alleged both intent and knowledge on the part of the Defendant, Plaintiff has stated a claim for induced infringement sufficient to survive Defendant's motion to dismiss.

## IV. Indefiniteness of Claims for Mixing Apparatus and Method

Defendant raises a cursory argument, in a footnote to its motion, that all claims of the '141 Patent should be found indefinite and therefore invalid under 35 U.S.C. § 112(b). (R. 23, Def.'s Mot. to Dismiss at 4 n.2.) Defendant argues that the claims of the '141 Patent all "include[] both an apparatus and the method steps of using [it]," and that under 35 U.S.C. § 112(b),[5] "[a] single claim which claims both an apparatus and the method steps of using the apparatus is indefinite." (*Id.*) As noted, Plaintiff did not respond to this argument, perhaps because it was buried in a single footnote, and Defendant appears to have abandoned the argument by not addressing it further in Defendant's Reply.

The U.S. Court of Appeals for the Seventh Circuit has "often said that a party can waive an argument by presenting it only in an undeveloped footnote." *Harmon v. Gordon*, 712 F.3d

---

[5] Formerly 35 U.S.C. § 112 ¶ 2.

14

1044, 1053 (7th Cir. 2013). The Seventh Circuit has also observed that "it is not th[e] court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver." *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) (internal quotations and alteration omitted). Those observations are apt here. By relegating its indefiniteness argument to a footnote, Defendant has not elucidated the argument sufficiently to allow a fair evaluation by the Court. Nor does the Court have the benefit of a response from Plaintiff—for which Plaintiff cannot greatly be faulted—to an argument by which Defendant seeks to invalidate the entirety of Plaintiff's patent.

Even assuming, however, that Defendant's indefiniteness argument is not waived at this stage, *see id.*, the argument is premature because it is intertwined with claim construction, which hasn't occurred yet.

Title 35, Section 112(b) provides that a patent's specification "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112(b). The Federal Circuit has held that a patent claim "covering both an apparatus and a method of use of that apparatus is invalid" as indefinite under § 112(b). *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). The Federal Circuit has observed that "an analysis under [35 U.S.C.] § 112, ¶ 2 is inextricably intertwined with claim construction." *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999). Because the issue of whether a patent claim is indefinite is closely intertwined with claim construction, *see Atmel Corp.*, 198 F.3d at 1379, which has not yet occurred in this case, addressing Defendant's indefiniteness argument would be premature. Numerous district courts have declined to entertain indefiniteness arguments at the pleading stage for precisely this reason. For example, in *Johnstech International Corp. v. JF Technology*

*Berhad*, the defendants moved to dismiss under Rule 12(b)(6), arguing—like Defendant does here—that the asserted patent claim was "invalid for indefiniteness because it is a hybrid of a machine and process claim." No. 14-CV-02864-JD, 2015 WL 2062223, at *3 (N.D. Cal. May 1, 2015). The court denied the motion without addressing the merits of the defendants' indefiniteness argument, concluding that doing so would be premature because "an analysis [of indefiniteness] under § 112 ¶ 2 is inextricably intertwined with claim construction, which has not yet occurred." *Id.* (observing that the defendants "cited no case law finding a claim invalid for indefiniteness under § 112 ¶ 2 at the motion to dismiss stage," and citing *Atmel*). Indeed, district courts have widely reached the same conclusion when parties have argued indefiniteness in the context of a Rule 12(b)(6) motion to dismiss.[6] The exception appears to prove the rule: the Court has found only one decision that granted a Rule 12(b)(6) motion that argued the asserted patent claims were indefinite under § 112(b). *See In re TLI Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 776, 798-804 (E.D. Va. 2015), *aff'd*, 823 F.3d 607 (Fed. Cir. 2016). In that case, however, the motion to dismiss was decided well after the pleading stage, by which point the parties had already "fully briefed" their claim construction positions, and the court had already heard "[e]xtensive oral argument" on claim construction. *Id.* at 782. In contrast here, the parties have

---

[6] *See, e.g.*, *Titanide Ventures, LLC v. Int'l Bus. Machines Corp.*, No. 4:12-CV-196, 2012 WL 5507327, at *3 (E.D. Tex. Oct. 18, 2012) (denying Rule 12(b)(6) motion that argued the asserted patent claims were indefinite for mixing apparatus and method, agreeing that "decisions regarding a patent claim's indefiniteness are appropriate only following claim construction"), *report and recommendation adopted*, 2012 WL 5507316 (E.D. Tex. Nov. 14, 2012); *Audio MPEG, Inc. v. HP Inc.*, Nos. 2:15-cv-73-HCM-RJK, 2:16-cv-82-HCM-RJK, 2016 WL 7010947, at *8 (E.D. Va. July 1, 2016) (denying Rule 12(b)(6) motion that argued indefiniteness, finding the argument "inappropriate at this stage" and concluding that "the more prudent approach is to address indefiniteness either during or after the *Markman* hearing"); *Xlear, Inc. v. STS Health, LLC*, No. 2:14-cv-00806-DN, 2015 WL 8967574, at *7 (D. Utah Dec. 15, 2015) (denying Rule 12(b)(6) motion, finding that it was "not the appropriate stage of litigation" to address indefiniteness and that "none of the cases cited by [the defendant] establish[ed] that indefiniteness may be determined on a motion to dismiss").

not yet identified claim terms to be construed or exchanged their proposed constructions of those terms, much less briefed or argued their claim construction positions to the Court.

The Court therefore rejects Defendant's indefiniteness argument as premature without prejudice to raising it again at the appropriate stage later in the case.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (R. 23) is DENIED. The parties shall appear for a status hearing on January 31, 2017, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities. If the parties are unable to meaningfully advance settlement discussions, the Court wishes for the parties to meet and confer regarding the possibility of an expedited claim construction procedure that focuses on the specific claim limitations and terms raised in Defendant's motion to dismiss. The parties are DIRECTED to prepare to discuss their respective positions on such a procedure at the January 31 status hearing.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: January 6, 2017**