UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LECAT'S VENTRILOSCOPE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 5298 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| MT TOOL AND MANUFACTURING, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lecat's Ventriloscope filed this suit on May 17, 2016, against Defendant MT Tool and Manufacturing for alleged infringement of U.S. Patent No. 7,645,141 ("the '141 Patent"). (R. 1, Compl.) The case is currently in the early stages of discovery. On November 30, 2016, Plaintiff served Defendant with "Initial Infringement Contentions" in accordance with Northern District of Illinois Local Patent Rule ("LPR") 2.2. Defendant moves to strike Plaintiff's Initial Infringement Contentions ("IICs") as failing to provide the disclosure required by LPR 2.2. (R. 34, Mot.) Plaintiff opposes the motion, arguing that its contentions satisfy LPR 2.2 and that Defendant's arguments essentially dispute the correctness of Plaintiff's theories rather than the sufficiency of its disclosures. (R. 38, Opp.) For the reasons explained below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

Some familiarity with the asserted patent and Plaintiff's infringement allegations helps frame Defendant's motion. The '141 Patent relates to an "arrangement for auscultation training." (R. 1-1, '141 Patent, at [54] (title); *see also id.* col. 1 ll. 41-42 ("The present application discloses an arrangement and method for auscultation training.").) As defined in the patent specification,

auscultation is "the act of listening to sounds within the body as a method of diagnosis." (*Id.* col. 1 ll. 13-14.) According to the specification, a stethoscope is an example of an auscultation device, as it may be used to "listen to internal sounds in the human body, such as for example heart sounds, breathing (breath sounds), intestinal noises, and blood flow in arteries and veins." (*Id.* col. 1 ll. 14-18.) The specification explains as background that "[u]sing a stethoscope or other auscultation device to diagnos[e] a patient requires training in detecting and identifying . . . abnormal auditory findings." (*Id.* col. 1 ll. 25-27.) "[S]imulators and mannequins are often used to train or test students on auscultation devices," and they may be equipped to "include a sound generating device embedded within the body . . . to produce sounds consist[ent] with an abnormal physical condition, which students must detect and identify." (*Id.* col. 1 ll. 31-37.)

The invention disclosed in the '141 Patent is an arrangement for auscultation training that "provides for the transmission of audio signals to an auscultation device for medical simulation." (*Id.* col. 1 ll. 42-45.) The claimed arrangement, according to the patent's Abstract, is designed to "allow for the broadcast of simulated medical sounds to a generally, normal appearing auscultation device for the purposes of teaching or testing using simulated patient scenarios, while allowing for normal person-to-person interaction between the simulated patient and physician." (*Id.* at [57].) In one exemplary embodiment of the invention that is described in the specification, a transmitter "sends a wireless signal to [an] auscultation device." (*Id.* col. 1 ll. 49-53.) The auscultation device, in turn, has an associated "receiver for receiving the audio signal from the transmitter" and a "speaker for relaying the sound to the end user." (*Id.*) The patent also describes and claims methods for using such an apparatus in auscultation training. Claim 1 of the patent, for example, reads:

2

> 1. An arrangement for auscultation training, comprising:
>> a signal generator capable of generating an audio signal representing at least one sound, the signal generator being controlled by a human operator, wherein the human operator plays one or more appropriate audio files according to a user's placement of a stethoscope headpiece on a patient;
>>
>> a transmitter associated with the device for transmitting an audio signal corresponding to the at least one sound;
>>
>> an auscultation device, comprising a stethoscope, remote from the transmitter, the auscultation device comprising:
>>
>> a receiver adapted to receive the audio signal from the transmitter; and
>>
>> a speaker adapted to audibly communicate the audio signal received by the receiver to the user.

(*Id.* at col. 5 l. 54 – col. 6 l. 7)

In its complaint, Plaintiff identified Defendant's "MT S-Scope" (the "S-Scope") as allegedly infringing the '141 Patent. (R. 1, Compl. ¶ 9.) Specifically, Plaintiff alleged that end users of the S-Scope directly infringe claims of the '141 Patent in violation of 35 U.S.C. § 271(a) when utilizing the S-Scope, (*id.* ¶¶ 9-10, 18-23), and that Defendant actively induces such infringement in violation of 35 U.S.C. § 271(b) by "making and selling the S-Scope, . . . making the S-Scope [iPhone] App . . . available on the Apple iTunes store as a free download, and actively promoting the S-Scope as an auscultation training device," (*id.* ¶ 16).

## LEGAL STANDARD

Under Local Patent Rule 2.2, a party claiming patent infringement must serve on all parties "Initial Infringement Contentions" containing the following information:

> (c) a chart identifying specifically where each element of each asserted [patent] claim is found within each Accused Instrumentality . . . ;
>
> [and]
>
> (e) for each [patent] claim that is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that . . . are inducing that direct infringement[.]

3

N.D. ILL. L.P.R. 2.2. "The purpose of infringement contentions is to provide notice of the plaintiff's theories of infringement early in the case." *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 08 C 3379, 2012 WL 5444979, at *4 (N.D. Ill. Mar. 21, 2012). To serve their purpose, a party's initial infringement contentions must, at a minimum, "set forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that . . . provided by the mere language of the patents themselves." *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2014 WL 4477932, at *2 (N.D. Ill. Sept. 10, 2014) (citation omitted). The disclosure must be "meaningful" and "nonevasive," not just boilerplate. N.D. ILL. L.P.R. 2.0 cmt. If contentions "provide fair notice of the scope of the plaintiff's infringement theory," they are generally considered adequate. *Trading Techs.*, 2014 WL 4477932, at *2 (citation omitted); *see also Rehco, LLC v. Spin Master, Ltd.*, No. 13 C 2245, 2014 WL 1088517, at *4 (N.D. Ill. Mar. 17, 2014) (denying motion to strike as "plainly lack[ing] merit" because initial infringement contentions included "detailed charts that both identify the specific elements for each of [the patent] claims and locate where those elements can be found within each of the accused . . . products").

## ANALYSIS

Showing how rare motions to strike initial infringement contentions are in this District, the parties have not identified, and the Court has not found, any decisions that articulate a standard for evaluating them. In other districts with patent rules that require such contentions, "motions to strike initial infringement content[ion]s are frequently treated as motions to compel amendment of the . . . contentions." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463, 2017 WL 76950, at *7 (N.D. Cal. Jan. 9, 2017); *see also Yama Capital LLC v. Canon Inc.*, No. 12 CIV. 7159, 2013 WL 6588589, at *4 (S.D.N.Y. Dec. 13, 2013) ("Even where a defendant

4

only moves to strike the infringement contentions, [it] may be construed . . . as an alternative motion to compel more detailed . . . contentions." (citation and internal quotation marks omitted)).[1] Courts in those districts have observed that "[s]triking a patentee's infringement contentions is a severe sanction that should be used sparingly and only for good cause." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808, 2015 WL 1517920, at *12 (N.D. Cal. Apr. 2, 2015); *accord Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-cv-02863, 2015 WL 4647923, at *2 & n.6 (N.D. Cal. Aug. 5, 2015) (citing *Finjan* for same proposition).

As this is the first time the Court is addressing the sufficiency of Plaintiff's IICs, it is appropriate to treat Defendant's motion as seeking to compel more detail, not as seeking the severe sanction of striking the contentions altogether. *See Bender v. Micrel Inc.*, No. C 09-01144, 2010 WL 520513, at *3 (N.D. Cal. Feb. 6, 2010) (compelling more detail rather than striking contentions altogether, even though plaintiff was "put on repeated notice that the initial infringement contentions . . . were deficient"). Defendant appears to recognize as much by arguing that Plaintiff should be "compelled to provide contentions which are compliant with the Local Patent Rules." (R. 40, Reply at 1.) The Court therefore treats Defendant's motion as one to compel more detailed IICs.

---

[1] Worth noting is that both the U.S. District Court for the Northern District of California's Patent Local Rules and the U.S. District Court for the Southern District of New York's Pilot Project rules for patent cases require initial infringement contentions in terms nearly identical to this District's LPR 2.2. How those Districts treat motions to strike infringement contentions is therefore persuasive authority. Similar to the requirements of LPR 2.2(c), initial infringement contentions in the Northern District of California must include "[a] chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." N.D. CAL. PATENT L.R. 3-1(c). In the Southern District of New York, they must include "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." *Yama Capital*, 2013 WL 6588589, at *2-3 (citation omitted).

I.  **Disclosure of the "Auscultation Device"**

Defendant first contends that Plaintiff's IICs are deficient because they fail to identify where the "auscultation device" element recited in the claims of the '141 Patent is present in the allegedly infringing S-Scope. (R. 34, Mot. at 3-6.) To satisfy LPR 2.2, Plaintiff's IICs must give fair notice of where Plaintiff contends this element can be found in the S-Scope. *See* N.D. ILL. L.P.R. 2.2(c); *Trading Techs.*, 2014 WL 4477932, at *2. Defendant argues that the IICs "contain no identification whatsoever as to where the 'auscultation device' can be found." (R. 34, Mot. at 5.) The chart in Plaintiff's IICs discloses the following for the "auscultation device" element recited in independent claim 1:

| CLAIM 1 ELEMENTS | MT TOOLS S-SCOPE |
|---|---|
| an auscultation device, comprising a stethoscope, | The MT Tools web page describes the S-Scope as follows: "Once a student places *the stethoscope* on the appropriate listening post the instructor / SP activates the sound file. The student hears the sounds through *the stethoscope*." <br><br> . . . <br><br> The S-Scope Getting Started booklet refers to the "MT S-Scope *Stethoscope*." <br><br> Accordingly, *the S-Scope includes a stethoscope.* |

(R. 34, Mot. at 18 (attaching Pl.'s IICs at 6) (emphases added).)

6

For the "auscultation device" element in claim 12, the only other independent claim of the '141 Patent, the IICs disclose the following:

| CLAIM 12 ELEMENTS | MT TOOLS S-SCOPE |
|---|---|
| an operator observing the placement of an auscultation device by a user relative to a patient; | . . .<br><br>The S-Scope spec sheet states, "Once a student *places the stethoscope on the appropriate listening post* the instructor / SP activates the sound file."<br><br>. . .<br><br>Accordingly, the standardized patient or instructor, either of which may be the operator-observer, taps the appropriate icon for a sound file that corresponds to *the placement of the stethoscope headpiece* on the standardized patient by the student. |
| the operator selecting an auscultation sound appropriate to the position of the auscultation device relative to the patient; | . . .<br><br>The S-Scope spec sheet states, "Once a student *places the stethoscope on the appropriate listening post* the instructor / SP activates the sound file."<br><br>. . .<br><br>Accordingly, the standardized patient or instructor, either of which may be the operator-observer, taps the appropriate icon for a sound file that *corresponds to the placement of the stethoscope headpiece on the standardized patient* by the student. |

7

| CLAIM 12 ELEMENTS | MT TOOLS S-SCOPE |
|---|---|
| transmitting an audio signal corresponding to the selected auscultation sound from a location remote to the auscultation device; | The MT Tools web page describes the S-Scope as follows: "Setup is as simple as pairing the scope with the device that will be used to transmit the sounds. *The stethoscope is completely wireless and receives stethoscope sounds from the device at a range of up to 30 feet.*"<br><br>. . .<br><br>Accordingly, when used, an iPhone or iPod operating the MT Tools App *transmits, using Bluetooth, the selected audio signal corresponding to the selected auscultation sound to the remote stethoscope. The stethoscope is an auscultation device.* |
| receiving the audio signal on the auscultation device; | The MT Tools web page describes the S-Scope as follows: "Setup is as simple as pairing the scope with the device that will be used to transmit the sounds. *The stethoscope is completely wireless and receives stethoscope sounds from the device at a range of up to 30 feet.*" The S-Scope Getting Started booklet . . . refers to *a component on the stethoscope* as the "receiver body." Accordingly, when used, *the stethoscope, which is an auscultation device, receives the audio signal from a remote iPhone or iPod operating the MT Tools App.* |
| communicating at least one sound represented by the audio signal to the user of the auscultation device. | The MT Tools web page describes the S-Scope as follows: "Once a student places the stethoscope on the appropriate listening post the instructor / SP activates the sound file. *The student hears the sounds through the stethoscope.*" Accordingly, when used, the S-Scope communicates at least one sound represented by the audio signal to the user of the auscultation device. |

(*Id.* at 21-23 (attaching Pl.'s IICs at 9-11) (emphases added).)

8

As can be seen in the above charts, the IICs repeatedly refer to and quote discussion of a "stethoscope" on Defendant's website and in its product literature for the S-Scope. The manner in which they do this makes it clear that Plaintiff contends that the "stethoscope" is what satisfies the "auscultation device" element in the claims. That is enough to satisfy LPR 2.2. *See Rehco*, 2014 WL 1088517, at *4. For example, for the claim 12 limitation "transmitting an audio signal . . . from a location remote to the *auscultation device*," Plaintiff asserts that "when used, an iPhone or iPod operating the MT Tools App transmits . . . the selected audio signal . . . *to the remote stethoscope. The stethoscope is an auscultation device*." (R. 34, Mot. at 22-23 (attachingPl.'s IICs at 10-11) (emphases added).) This both implicitly and explicitly communicates Plaintiff's contention that the S-Scope's "stethoscope" is what satisfies the "auscultation device" element of the claims. Likewise, for the claim 12 limitation "receiving the audio signal on the auscultation device," Plaintiff asserts that "[t]he MT Tools web page describes the S-Scope as follows: ' . . . The *stethoscope* is completely wireless and *receives stethoscope sounds* . . . at a range of up to 30 feet.'" (*Id.* at 23 (attaching Pl.'s IICs at 11) (emphases added).) By associating this limitation with the quoted language from Defendant's website, Plaintiff clearly contends that the "auscultation device" corresponds to the S-Scope's "stethoscope."

Plaintiff's IICs are not opaque, boilerplate, or evasive in terms of disclosing its theory of where the "auscultation device" can be found in the allegedly infringing S-Scope. Indeed, Defendant evidently understands Plaintiff's theory: it asserts that "[t]hroughout Plaintiff's charts, the 'auscultation device' element is . . . conclusorily *stated to be present by virtue of the described . . . stethoscope*." (R. 34, Mot. at 5 (emphasis added) (internal quotation marks omitted).) By identifying the specific part of the S-Scope that is alleged to satisfy the

9

"auscultation device" element, the IICs provide Defendant with fair notice of Plaintiff's infringement theory "beyond that which is provided by the mere language" of the patent itself. *Trading Techs.*, 2014 WL 4477932, at *2 (citation omitted).

Defendant argues, however, that the IICs are inadequate because the "stethoscope" to which they refer is in fact a *simulation* stethoscope that is "known by Plaintiff to be incapable of performing auscultation." (R. 34, Mot. at 5.) According to Defendant, citing to the S-Scope's simulation stethoscope as satisfying the "auscultation device" element is not a sufficient disclosure because it does not explain "how a device that is incapable of auscultation meets the limitations of an 'auscultation device' in the claims." (*Id.* at 6.) This demands too much. LPR 2.2 requires Plaintiff to disclose *where* it contends the "auscultation device" element is found in the S-Scope, which Plaintiff has done. The Rule does not require Plaintiff to prove its infringement case at this early stage. *See DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (observing Patent Local Rules governing infringement contentions "do not, as is sometimes misunderstood, require . . . a plaintiff to prove its infringement case'" (citation and internal quotation marks omitted)).

While Defendant's motion professes to argue that the IICs insufficiently disclose Plaintiff's infringement theory, in reality the motion simply reflects disagreement with the infringement theory Plaintiff *has* disclosed. When Defendant asserts that the S-Scope's stethoscope is "known by Plaintiff to be incapable of performing auscultation" and that Plaintiff has failed to explain "how a device that is incapable of auscultation meets the limitations of an 'auscultation device' in the claims," (*id.* at 5-6), it is plainly—though indirectly—arguing that the S-Scope's simulation stethoscope does not qualify as an "auscultation device." The Court is

cognizant that this is one of Defendant's non-infringement arguments.[2] But disagreeing with Plaintiff's theory that a simulation stethoscope *can* qualify as an "auscultation device"[3] does not mean that Plaintiff's IICs are insufficient. *See KI Ventures, LLC v. Fry's Elecs., Inc.*, 579 F. App'x 985, 991 (Fed. Cir. 2014) ("[D]isagreement with [a party's] interpretation of its claims does not make [its] infringement contentions insufficient."); *SSL Servs., LLC v. Cisco Sys., Inc.*, No. 2:15-cv-00433, 2016 WL 727673, at *8 (E.D. Tex. Feb. 24, 2016) ("[I]nfringement contentions are not meant to provide a forum for litigation of the substantive issues." (citation and internal quotation marks omitted)). If anything, that Defendant can formulate a coherent rebuttal to Plaintiff's theory shows that the theory has sufficiently been disclosed.

Because they sufficiently disclose Plaintiff's theory as to what part of the allegedly infringing S-Scope constitutes the "auscultation device," Plaintiff's IICs satisfy LPR 2.2(c). *See Trading Techs.*, 2014 WL 4477932, at *2; *Rehco*, 2014 WL 1088517, at *4.

## II. Disclosures Related to Indirect Infringement

Defendant next argues that Plaintiff's IICs are deficient in that they fail to provide the disclosures required for Plaintiff's induced infringement claim. (R. 34, Mot. at 1, 7-9.) Because Plaintiff is alleging that Defendant induces infringement, the IICs must include both (1) an "identification of any direct infringement" and (2) a "description of the acts of [Defendant] that . . . are inducing that direct infringement." N.D. ILL. L.P.R. 2.2(e). Defendant argues that the IICs fail to sufficiently disclose either. Defendant asserts that the IICs "fail to specifically identify any direct infringement" and "fail to specify the acts by defendant that result in downstream arrangement . . . in the allegedly infringing combination." (R. 34, Mot. at 1, 7.)

---

[2] This argument was incipient in Defendant's earlier motion to dismiss. (R. 23.)

[3] Plaintiff explicitly states that its "theory of infringement . . . is that the scope of the claims of the '141 Patent includes simulation stethoscopes." (R. 38, Opp. at 6.)

11

The Court finds that Plaintiff's IICs provide an "identification of any direct infringement" sufficient to satisfy LPR 2.2(e). Courts in other districts with disclosure requirements similar to LPR 2.2(e) have upheld contentions relating to indirect infringement so long as the plaintiff "discloses sufficient information to set forth its theory of infringement," "identifies a particular product . . . that was sold to customers," and contends that the direct infringement "occurs when the customer uses the [product]." *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647, 2015 WL 335842, at *7 (N.D. Cal. Jan. 26, 2015); *see also DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (declining to strike indirect infringement contentions that "identif[ied] a specific product line" that allegedly infringed when used by customers, but did not "identify which specific customers" actually engaged in infringing use).[4] Plaintiff has done essentially that here. Its IICs state, in relevant part:

- "[Plaintiff] asserts that the S-Scope meets every physical claim limitation in the asserted claims of the '141 patent, as outlined in the above claim charts." (R. 34, Mot. at 26 (attaching Pl.'s IICs at 14).)

- "[Plaintiff] asserts that the method steps found within the independent claims, specifically claims 1 and 12 of the '141 patent are directly infringed by users of the S-Scope when the S-Scope is used according to the instructions provided by MT Tool." (*Id.*)

While not extraordinarily detailed, Plaintiff has identified a particular product (the S-Scope), has set forth its theory of how the claims read on the S-Scope (in the charts excerpted above), and has asserted that end users directly infringe when they use the S-Scope in accordance with

---

[4] Northern District of California Patent Local Rule 3-1(d) requires disclosure of indirect infringement contentions in language nearly identical to this District's LPR 2.2(e). Specifically, Rule 3-1(d) requires a party alleging indirect infringement to provide, "[f]or each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." N.D. CAL. PATENT L.R. 3-1(d).

instructions provided by Defendant. That is a sufficient identification of direct infringement for purposes of LPR 2.2(e). *See Blue Spike*, 2015 WL 335842, at *7; *DCG Sys.*, 2012 WL 1309161, at *2. It is not necessary at this stage for Plaintiff to specifically identify any end users or customers that are alleged to have directly infringed. *See DCG Sys.*, 2012 WL 1309161, at *2; *see also Vigilos LLC v. Sling Media Inc.*, No. C-11-04117, 2012 WL 9973147, at *6 (N.D. Cal. July 12, 2012) (noting that for preliminary infringement contentions, "[p]laintiff need not identify specific third parties that directly infringed").

The Court also finds that Plaintiff's "description of the acts of the [Defendant] that . . . are inducing . . . direct infringement" is generally sufficient to satisfy LPR 2.2(e), with one exception discussed further below. Courts have deemed indirect infringement contentions sufficient where they identify product literature that allegedly teaches customers to use the product in an infringing manner. For example, in *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-02965, 2015 WL 5210669 (N.D. Cal. Sept. 7, 2015), the plaintiff's contentions asserted that "[defendant] has indirectly infringed . . . by distributing manuals and other documentation on how to use [the product] in an infringing manner." *Id.* at *5. Because the plaintiff's contentions specifically identified, and included screenshots from, the manuals and documentation that allegedly taught customers to use the product in an infringing manner, the court found them sufficient. *Id.* Plaintiff has taken a similar approach here, relying however on quotes from product literature rather than screenshots. In pertinent part, Plaintiff's IICs state:

- "[Defendant] induces . . . direct infringement by making, offering for sale, and selling the S-Scope and by instructing its customers, including purchasers and users of the S-Scope, to use the S-Scope according to its instructions, which results in the direct infringement." (R. 34, Mot. at 27 (attaching Pl.'s IICs at 15).)

13

- "[Defendant] instructs that the S-Scope, when paired with the MT Tool App, functions to receive and play sound files that correspond to a user's placement of the stethoscope head on the appropriate listening post of a patient." (*Id.* at 26 (attaching Pl.'s IICs at 14).)
- "[Defendant's] website teaches that: 'Once a student places the stethoscope on the appropriate listening post the instructor / SP activates the sound file. The student hears the sounds through the stethoscope. Setup is as simple as pairing the scope with the device that will be used to transmit the sounds. The stethoscope is completely wireless and receives stethoscope sounds from the device at a range of up to 30 feet. Scopes come packaged with device and app, including multiple different heart and lung sounds with optional cases.'" (*Id.*)
- "At another demonstration, [Defendant's] printed information regarding the S-Scope stated as follows: 'Students place the bell where they think appropriate. The SP or instructor controls the sounds from physiologically graphic touch screen icons.'" (*Id.*)

The claim chart in Plaintiff's IICs relies on further materials that allegedly instruct Defendant's customers to use the S-Scope in an infringing manner, such as Defendant's website, an "S-Scope Getting Started" booklet produced at DEF10-DEF16, and a "spec sheet" produced at DEF1278. (*See id.* at 16-24 (attaching Pl.'s IICs at 4-12).) However, in some instances, Plaintiff's contentions do not specifically identify the material on which they rely, for example when they refer only vaguely to "printed information" provided at a demonstration of the S-Scope. (*Id.* at 26 (attaching Pl.'s IICs at 14).) Plaintiff should supplement its IICs to specifically identify the product literature or other materials that allegedly instruct customers to use the S-Scope in an infringing manner. *See Creagri, Inc. v. Pinnnaclife Inc.*, No. 11-cv-06635, 2012 WL 5389775, at *5 (N.D. Cal. Nov. 2, 2012) (compelling more detailed contentions as to indirect infringement

because "[plaintiff] fail[ed] to identify what advertisements and instructions lead to . . . infringing behavior").

The remainder of Defendant's argument merely advances another of its non-infringement positions. Defendant argues that "the asserted claims require three differently-termed actors" and that the "[t]he website descriptions relied on by Plaintiff . . . make it clear that only two persons are described as interacting with the accused product." (R. 34, Mot. at 7-8.) According to Defendant, Plaintiff's contentions are deficient because they fail to explain how "instructions involving two actors induce end users to interact with [the S-Scope using] a 'human operator,' a 'user' and a 'patient' . . . ." (*Id.* at 8.) The Court is aware of Defendant's non-infringement argument that the claims of the '141 Patent require three-person use, whereas Defendant's product literature only teaches two-person use. However, as already noted, "infringement contentions are not meant to provide a forum for litigation of . . . substantive issues." *SSL Servs.*, 2016 WL 727673, at *7-8 (citation and internal quotation marks omitted). It is sufficient for Plaintiff to identify the acts that allegedly induce infringement, even if Defendant disputes that those acts induce infringement. Aside from the vagueness of some references to product literature discussed above, the Court finds that Plaintiff's IICs satisfy LPR 2.2(e).

## CONCLUSION

For the foregoing reasons, Defendant's motion to strike (R. 34) is GRANTED in part and DENIED in part. Plaintiff is ORDERED to supplement its Initial Infringement Contentions within 14 days to specifically identify the product literature or other materials that allegedly instruct customers to use the S-Scope in an infringing manner, including the bates number if such materials have been produced in discovery. The timeline for other disclosures under the Local Patent Rules shall remain in effect. The parties are DIRECTED to reevaluate their settlement

15

positions in light of this opinion and to exhaust all settlement possibilities prior to the next status hearing, which will now occur on February 15, 2017.

ENTERED: /s/ Rubén Castillo

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: February 6, 2017**

16