UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LECAT'S VENTRILOSCOPE, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 16 C 5298 |
| v. | ) ) ) Chief Judge Rubén Castillo |
| MT TOOL AND MANUFACTURING, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Lecat's Ventriloscope ("Plaintiff") filed this suit against MT Tool and Manufacturing ("Defendant") for alleged infringement of U.S. Patent No. 7,645,141 (the "'141 Patent"). (R. 1, Compl.) Trial is currently set for August 13, 2018. (R. 77, Min. Entry.) Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, summary judgment pursuant to Federal Rule of Civil Procedure 56. (R. 82, Mot. for J. Pleadings at 1, 12-13.) For the reasons stated below, Defendant's motion is denied.

## BACKGROUND

The Court presumes familiarity with this case, the '141 Patent, and the prosecution history of the '141 Patent, as thoroughly set forth in several prior opinions. *See Lecat's Ventriloscope v. MT Tool & Mfg.*, 283 F. Supp. 3d 702 (N.D. Ill. 2018) (construing disputed claim terms); *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 WL 489416 (N.D. Ill. Feb. 6, 2017) (granting in part and denying in part Defendant's motion to strike Plaintiff's initial infringement contentions); *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 WL 1362036 (N.D. Ill. Jan. 6, 2017) (denying Defendant's motion to dismiss). In brief, the '141 Patent discloses and claims an "arrangement for auscultation training"—auscultation being "the

act of listening to sounds within the body as a method of diagnosis." (R. 54-1, '141 Patent, at [21], [54], col. 1 ll. 13-14.) A stethoscope is an example of an auscultation device. (*Id.* col. 1 ll. 14-18.) Plaintiff alleges that Defendant indirectly infringes the '141 Patent by marketing and selling a stethoscope-like training device, the MT S-Scope ("S-Scope"). (R. 54, Am. Compl. ¶ 9.) Plaintiff alleges both forms of indirect infringement: induced infringement in violation of 35 U.S.C. § 271(b) and contributory infringement in violation of Section 271(c). (*Id.* ¶¶ 6-34; R. 82-2, Pl.'s Am. Infringement Contentions at 3.)

The parties disagreed over the proper construction of the claim terms "auscultation device" and "stethoscope."[1] *Lecat's Ventriloscope*, 283 F. Supp. 3d at 704. Specifically, the parties disputed whether these terms encompassed "simulation or 'dummy' devices that look like stethoscopes (or other auscultation devices) but cannot function as such." *Id.* The Court issued claim constructions for the disputed terms on January 11, 2018, construing "auscultation device" and "stethoscope" to not include such simulation or "dummy" devices. (R. 75, Mem. Op.) At the next status hearing on January 31, 2018, Plaintiff's counsel conceded that, in light of the Court's claim construction ruling, "it appears that the accused device no longer infringes literally." (R. 80, Jan. 31, 2018, Hr'g Tr. at 3.) Plaintiff maintained, however, that the S-Scope infringes under the doctrine of equivalents ("DOE") and indicated its intent to proceed to trial under a DOE theory. (*Id.*) The Court ordered that the parties complete discovery by June 29, 2018, and set a trial date of August 13, 2018. (*Id.* at 5; R. 77, Min. Entry.)

On March 2, 2018, Defendant filed its present motion for judgment on the pleadings. (R. 82, Mot. for J. Pleadings.) Defendant argues that Plaintiff's reliance on DOE for the claim term "auscultation device" is untenable as a matter of law—and that it is accordingly entitled to

---

[1] The parties also disputed the proper construction of other claim terms not relevant here. *Lecat's Ventriloscope*, 283 F. Supp. 3d at 704.

2

judgment—for two reasons. First, Defendant contends that Plaintiff's DOE theory is barred by prosecution history estoppel, based on amendments made to the claims during prosecution. (*Id.* at 1, 3, 5-9.) Second, Defendant contends that application of DOE would entirely vitiate this claim limitation, contrary to the all-elements rule. (*Id.* at 1, 3, 9-12.) Defendant contends that judgment on the pleadings is appropriate because the Court need only rely on the '141 Patent, the prosecution history, and its own claim construction ruling, all of which may be considered under Rule 12(c) because they are integral to the complaint or subject to judicial notice. (*Id.* at 3-5.) In the alternative, if the Court finds it "necessary . . . to consider information outside of the scope of the pleadings," Defendant requests that the Court treat its motion as a motion under Rule 56 and grant summary judgment on the same basis. (*Id.* at 12-13.)

In response, Plaintiff preliminarily argues that the Court should not convert Defendant's motion into a motion for summary judgment because Defendant did not comply with Local Rule 56.1, which requires a party moving for summary judgment to file a supporting statement of facts with citations to admissible evidence. (R. 100, Pl.'s Resp. at 3.) In the alternative, if the Court does convert the motion, Plaintiff requests notice and additional time to obtain and submit expert declarations. (*Id.* at 9 & n.4.)

On the merits, Plaintiff argues that neither prosecution history estoppel nor vitiation precludes its DOE theory as a matter of law. (*Id.* at 4-20.) Plaintiff contends that estoppel does not apply at all because, although claim 1[2] was narrowed during prosecution, the narrowing amendment was not made for reasons related to patentability. (*Id.* at 10-16.) To the extent there is any ambiguity or doubt as to the reason for the amendment, Plaintiff further argues, the Court should infer that the amendment was not related to patentability because Plaintiff is entitled to

---

[2] All claim numbers herein refer to the claims as issued, unless otherwise noted.

3

have reasonable inferences drawn in its favor. (*Id.* at 14.) Plaintiff also contends that the scope of any estoppel would not encompass its DOE theory because the subject matter over which Plaintiff asserts equivalence—non-functioning stethoscopes—is different from the territory surrendered by the narrowing amendment to claim 1. (*Id.* at 16-20.)

Plaintiff contends that vitiation also does not preclude its DOE theory as a matter of law because a reasonable jury could find that the accused S-Scope satisfies the "auscultation device" limitation under an appropriate equivalence analysis. (*Id.* at 4-9.)

## LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings after the complaint and answer have been filed, but early enough to not delay trial. FED. R. CIV. P. 12(c); *Fed. Deposit Ins. Corp. v. FBOP Corp.*, 252 F. Supp. 3d 664, 671 (N.D. Ill. 2017). The customary function of a Rule 12(c) motion is to dispose of a case based on the substantive merits of the parties' claims and defenses, so far as they are revealed in the pleadings and other information subject to judicial notice. *Fed. Deposit Ins. Corp.*, 252 F. Supp. 3d at 671-72; *see also* 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1369 (2018 ed.) (explaining the "essential function" of Rule 12(c) as "permitting the summary disposition of cases that do not involve any substantive dispute that justifies a full trial"). A court may grant judgment on the pleadings if no genuine issues of material fact need to be resolved and the moving party is entitled to judgment as a matter of law. *U.S. Commodity Futures Trading Comm'n v. Oystacher*, 203 F. Supp. 3d 934, 939 (N.D. Ill. 2016); *see also Alexander v. City of Chicago*, 994 F.2d 333, 335-36 (7th Cir. 1993) (clarifying that when a Rule 12(c) motion is used in its customary application, rather than to raise various defenses under Rule 12(b), "the appropriate standard is that applicable to summary judgment,

4

except that the court may consider only the contents of the pleadings").[3] However, "if it appears that discovery is necessary to fairly resolve a claim on the merits," the motion should be denied. *Fed. Deposit Ins., Corp.*, 252 F. Supp. 3d at 672.

In evaluating a motion for judgment on the pleadings, the Court must accept the non-movant's factual allegations as true and draw all reasonable inferences in its favor, but need not accept as true any legal assertions. *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). The Court's review is limited to the pleadings; however, it may also take into consideration documents incorporated by reference into the pleadings and matters properly subject to judicial notice. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017). Matters subject to judicial notice include "pleadings, orders, and transcripts from prior proceedings in the case." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

## ANALYSIS

As a preliminary matter, the Court considers whether to convert Defendant's motion to one for summary judgment. If matters outside the pleadings are presented to the Court on a motion under Rule 12(c) and are not excluded, the Court must treat the motion as a summary judgment motion under Rule 56. FED. R. CIV. P. 12(d). In doing so, the Court must give all parties a "reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Because neither party has actually presented matters outside the pleadings, the Court concludes that Rule 12(d) does not require converting Defendant's motion.

In arguing over the application of prosecution history estoppel and vitiation, the parties rely, for the most part, only on the '141 Patent, the prosecution history, and this Court's claim

---

[3] Although patent cases are generally governed by the law of the U.S. Court of Appeals for the Federal Circuit, the regional Circuit's procedural law applies to a motion for judgment on the pleadings. *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 984-85 (Fed. Cir. 2009).

5

construction ruling, all of which are part of the record in this case. (*See* R. 54-1, '141 Patent; R. 71, '141 Patent Pros. History; R. 75, Mem. Op.) The Court plainly may treat the '141 Patent as part of the pleadings because it was attached to the complaint and is central to Plaintiff's allegations of infringement. FED. R. CIV. P. 10(c); *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 (Fed. Cir. 2014) (holding that district court properly considered asserted patent on Rule 12(c) motion because it was "central to [plaintiff's] claim of infringement"). As Plaintiff concedes, (R. 100, Pl.'s Resp. at 10-11), the Court may take judicial notice of the '141 Patent's prosecution history because it is a matter of public record and not reasonably subject to dispute. FED. R. EVID. 201(b)(2); 37 C.F.R. § 1.11(a) ("[A]ll papers relating to the file of . . . a patent . . . are open to inspection by the public[.]"); *Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014) ("A court may . . . take judicial notice of . . . prosecution histories, which are 'public records.'"), *aff'd sub nom.*, 818 F.3d 1369 (Fed. Cir. 2016); *see also Anderson*, 570 F. App'x at 932 n.3 ("It is . . . well-established that a court may take judicial notice of patents or patent applications."). And neither party disputes that the Court may take judicial notice of its own claim construction ruling in this case. *Scherr*, 703 F.3d at 1073; *see also Bartlett v. City of Chicago Sch. Dist. #299*, 40 F. Supp. 3d 959, 963 (N.D. Ill. 2014) ("The Court may . . . take judicial notice of documents that are part of the public record without triggering . . . Rule 12(d), including pleadings, orders, and transcripts from prior proceedings in the case.").

However, as reflected below, the parties' dispute over vitiation goes beyond these materials into a detailed discussion and analysis of the accused S-Scope—specifically, whether it satisfies the "auscultation device" limitation under a proper DOE analysis. At the same time, though, Rule 12(d) is not triggered because neither party has actually presented materials outside

6

the pleadings. Instead, the parties have simply assumed the Court's familiarity with the S-Scope. Under these circumstances, the Court need not convert Defendant's motion into one for summary judgment, and will instead simply determine whether Defendant has shown its entitlement to judgment as a matter of law based on the pleadings. *U.S. Commodity Futures Trading Comm'n*, 203 F. Supp. 3d at 939.

## I.     Doctrine of Equivalents

Because prosecution history estoppel acts as a "legal limitation on the doctrine of equivalents," *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.* ("*Festo III*"), 493 F.3d 1368, 1377 (Fed. Cir. 2007) (citation omitted), it is helpful to first describe the latter doctrine. "There are two types of infringement: literal infringement . . . and infringement under the doctrine of equivalents." *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012). Under the doctrine of equivalents, even if an accused product does not satisfy every element of a patent claim literally, it may nevertheless be found to infringe if it includes the equivalent of the missing claim element(s). *Intendis GMBH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1360 (Fed. Cir. 2016). The general test of equivalence asks whether the differences between the elements of the accused product and the corresponding elements of the patent claim are merely "insubstantial." *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 700 (Fed. Cir. 2014) (citation omitted). An alternate formulation of the test asks, also on an element-by-element basis, whether the elements of the accused product (1) perform substantially the same function (2) in substantially the same way (3) with substantially the same result as the corresponding elements of the claimed invention.[4] *Intendis GMBH*, 822 F.3d at 1360; *see also Pac. Coast Marine Windshields Ltd.*, 739 F.3d 694 at 700 (referring to function-way-result test

---

[4] This formulation is referred to as the "function-way-result" test. *Intendis GMBH*, 822 F.3d at 1360.

7

as "[a]n alternate formulation" of the general equivalence test). With that background in mind, the Court turns to prosecution history estoppel.

## II. Prosecution History Estoppel

When a patent claim is narrowed during prosecution, prosecution history estoppel prevents the patentee from asserting the doctrine of equivalents in a later infringement suit to cover the relinquished subject matter. *Pac. Coast Marine Windshields Ltd.*, 739 F.3d at 700-01. In other words, prosecution history estoppel "limits the range of equivalents available to a patentee" under the doctrine of equivalents by "preventing recapture of subject matter surrendered during prosecution of the patent." *Festo III*, 493 F.3d at 1377 (citation omitted). The estoppel can arise from either: (1) amendments during prosecution that narrow a claim (amendment-based estoppel); or (2) arguments to the patent examiner that clearly and unmistakably surrender claim scope (argument-based estoppel). *Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1337 (Fed. Cir. 2015); *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006).

In its motion, Defendant asserts only amendment-based estoppel. (R. 82, Mot. for J. Pleadings at 3, 5-9; R. 100, Pl.'s Resp. at 10 ("Defendant's Motion focuses solely on amendment-based narrowing.").) Defendant cites the May 5, 2009, amendments to the claims, during which the applicant narrowed claim 1 by inserting "comprising a stethoscope" into the limitation "an auscultation device remote from the transmitter," such that the amended, as-allowed limitation recited "an auscultation device, ***comprising a stethoscope,*** remote from the transmitter." (R. 82, Mot. for J. Pleadings at 6; *see also* R. 71, '141 Patent Pros. History at 133.) Defendant argues that this amendment estops Plaintiff from now asserting, under the doctrine of equivalents, that "auscultation device" encompasses non-functional devices. (R. 82, Mot. for J. Pleadings at 3.)

8

If an amendment narrows the scope of a claim and the reason for the amendment was "a substantial one relating to patentability," prosecution history estoppel applies to the amended claim limitation. *EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014) (citation omitted). Accordingly, the first question in an estoppel inquiry is whether the cited amendment narrowed the scope of the claim. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.* ("*Festo II*"), 344 F.3d 1359, 1366 (Fed. Cir. 2003). If so, the second question is "whether the reason for that amendment was a substantial one relating to patentability." *Id.* The patentee bears the burden of establishing that the reason was unrelated to patentability. *Festo III*, 493 F.3d at 1377. In making this assessment, only the prosecution history itself may be considered. *See Festo II*, 344 F.3d at 1367 ("[W]e reinstate our earlier holding that [the amendment-reason inquiry] is restricted to the evidence in the prosecution history[.]"); *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003) (refusing to consider a declaration from the prosecuting attorney in determining the reason for a claim amendment, explaining that "[o]nly the public record of the patent prosecution, the prosecution history, can be a basis for such a reason"). If the prosecution history does not reveal a reason for the amendment, the Court must presume that it was made for a substantial reason relating to patentability. *Festo II*, 344 F.3d at 1366-68; *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997) ("Where no explanation is established . . . the court should presume that the patent applicant had a substantial reason related to patentability for including the limiting element added by amendment.").

Plaintiff concedes that the May 2009 amendment to the "auscultation device" limitation narrowed claim 1 "by requiring a stethoscope auscultation device," but argues that this amendment was not made for reasons related to patentability. (R. 100, Pl.'s Resp. at 11-16.) The

9

Court must conclude otherwise because the prosecution history does not reveal a reason that this limitation was narrowed. *See Warner-Jenkinson Co.*, 520 U.S. at 33; *Festo II*, 344 F.3d at 1366-68; *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.* ("*Festo I*"), 535 U.S. 722, 740 (2002) (explaining that "when the court is unable to determine the purpose underlying a narrowing amendment . . . the court should presume that the patentee surrendered all subject matter between the broader and the narrower language").

As noted in the Court's claim construction opinion, the May 5, 2009, claim amendments were made in response to a February 5, 2009, Office Action in which the examiner rejected all pending claims as anticipated or rendered obvious by U.S. Patent No. 6,220,866 issued to Amend et al. ("Amend"). *Lecat's Ventriloscope*, 283 F. Supp. 3d at 721. As the Court explained, "in the system of Amend, appropriate auscultatory sounds are selected and played automatically by a computer—without human involvement—in response to sensors detecting the position of a headpiece." *Id.* To overcome the examiner's rejection, the applicant amended claims 1 and 12—the independent claims—"to introduce human control over which auscultatory sounds are selected and played to a user" and distinguished Amend on that basis. *Id.* Plaintiff argues that only the amendments introducing human control were for patentability reasons—namely, to overcome Amend—and that the applicant's reason for amending the "auscultation device" limitation in claim 1 was merely "so that the resulting claim would correspond closer with the specification (*i.e.*, a clarifying amendment)." (R. 100, Pl.'s Resp. at 14.) Plaintiff also points out that claim 12 was not similarly amended to narrow the recited "auscultation device," which demonstrates, according to Plaintiff, that the addition of "comprising a stethoscope" to claim 1 was not motivated by patentability. (*Id.* at 13-14.)

10

While Plaintiff's explanation is certainly plausible, the Court does not find it sufficiently persuasive to carry Plaintiff's burden of establishing a non-patentability reason for this narrowing amendment. As Plaintiff admits, the prosecution history provides no express explanation for the amendment. (*Id.* at 13 (acknowledging that the prosecution history "is not as clear as could be" on the reason for this amendment).) Nor is there any self-evident reason for it, as there is with the human-control amendments to claims 1 and 12. Plaintiff's proffered explanation ultimately rests on a single statement by the applicant, in remarks accompanying the May 2009 amendment, that "the amendments are supported at least by paragraph[] . . . 27 of the application[.]" (R. 71, '141 Patent Pros. History at 136; *see also* R. 100, Pl.'s Resp. at 14 (citing applicant's statement referring to paragraph 27).) However, it is clear that paragraph 27 was cited by the applicant because it provided specification support for the human-control amendments, not because it illuminated the specification's usage of "auscultation device." (*See* R. '141 Patent Pros. History at 24.) The applicant's reference to paragraph 27 thus lends no support to Plaintiff's explanation that the "auscultation device" limitation was amended simply to "correspond closer with the specification." (R. 100, Pl.'s Resp. at 14.)

The Court does recognize that, in its accompanying remarks, the applicant repeatedly and explicitly called attention to the human-control amendments as a basis for distinguishing Amend. (*See, e.g.*, R. 71, '141 Patent Pros. History at 139 ("[T]he Applicant points out that the independent claims . . . have been amended to include an instructor controlling the simulation in real time. Neither Amend et al. nor Eggert et al. teach or suggest such control by a human operator.").) The relative lack of attention to the remaining amendments, by contrast, could suggest that they were not considered important to patentability. However, in *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997), the U.S. Supreme Court concluded under

11

analogous circumstances that unexplained amendments should be presumed to be motivated by patentability even when they are made alongside other amendments that are clearly the locus of patentability. In *Warner-Jenkinson*, the claims of the asserted patent were amended during prosecution to require "a pH from approximately 6.0 to 9.0" for the claimed filtration process. 520 U.S. at 22, 32. It was undisputed that the upper limit of 9.0 was added to distinguish prior art cited by the examiner that disclosed a similar filtration process operating at a pH above 9.0. *Id.* at 32. But "the reason for adding the lower limit of 6.0 [was] unclear." *Id.* The lower limit "certainly did not serve to distinguish the [prior art], which said nothing about pH levels below 6.0." *Id.* The Court was thus left with the problem of "what to do . . . where the record seems not to reveal the reason for including the lower pH limit of 6.0." *Id.* at 33. While the Court did not ultimately resolve the issue,[5] it nonetheless held that, in the absence of a persuasive explanation, the applicant should be presumed to have added the lower pH limit for a substantial reason related to patentability. *Id.* at 33-34.

Like *Warner-Jenkinson*, this case presents claim amendments whose rationale is obviously related to patentability and a simultaneous amendment whose rationale is unclear. The human-control amendments to claims 1 and 12 were—according to the applicant's express statements—made to overcome prior art, while the reason for the narrowing amendment to "auscultation device" is neither expressly stated nor apparent from the record. The Court cannot infer, simply from the outsized emphasis on the human-control amendments, that the amendment to "auscultation device" was unrelated to patentability. *See Warner-Jenkinson Co.*, 520 U.S. at

---

[5] The Court did not resolve the question itself because the patentee "ha[d] not proffered in this Court a reason for the addition of a lower pH limit." *Warner-Jenkinson Co.*, 520 U.S. at 34. As a result, it was impossible to tell whether "a reason in fact exists, but simply was not adequately developed," or whether the prosecution history revealed no reason at all. *Id.* The Court therefore remanded for consideration of "whether reasons for [the lower pH limit] were offered or not" and whether to allow further opportunity for the patentee to establish such reasons. *Id.*

33-34. And Plaintiff's proffered reason is not persuasive, as discussed above. Under these circumstances, the Court must presume that the "comprising a stethoscope" amendment was made for a substantial reason relating to patentability. *Festo I*, 535 U.S. at 740; *Warner-Jenkinson Co.*, 520 U.S. at 33; *Festo II*, 344 F.3d at 1366-68. Accordingly, prosecution history estoppel applies to the "auscultation device" limitation of claim 1.

Having concluded that prosecution history estoppel applies, a third and final issue remains: whether the particular equivalent in question is within the scope of the subject matter surrendered by the narrowing amendment. *Festo II*, 344 F.3d at 1367; *see also Pac. Coast Marine Windshields Ltd.*, 739 F.3d at 702 (explaining that prosecution history estoppel turns on three questions: "(1) whether there was a surrender; (2) whether it was for reasons of patentability; and (3) whether the accused design is within the scope of the surrender"). Plaintiff contends that prosecution history estoppel does not preclude its DOE theory because, even assuming that amendment-based estoppel exists, simulation or "dummy" stethoscopes are not within the territory surrendered by narrowing the "auscultation device" limitation in claim 1. (R. 100, Pl.'s Resp. at 17-18.)

The Court agrees with Plaintiff. Prosecution history estoppel "does not completely bar the benefit of the doctrine of equivalents from all litigation related to the amended claim." *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010). Instead, "[t]he scope of the estoppel must fit the nature of the narrowing amendment." *Id.* Accordingly, "[a] district court must look to the specifics of the amendment . . . to determine whether estoppel precludes the particular doctrine of equivalents argument being made." *Id.*; *see also Festo I*, 535 U.S. at 737-38 ("Though prosecution history estoppel can bar a patentee from challenging a wide range of

13

alleged equivalents . . . , its reach requires an examination of the subject matter surrendered by the narrowing amendment.").

The amendment to claim 1 narrowed the recited "auscultation device" by requiring that it "compris[e] a stethoscope." (R. 71, '141 Patent Pros. History at 133.) Ordinarily, "comprising" is used as a transitional term that permits unrecited elements. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999). As used in the claims here, however, the phrase "comprising a stethoscope" clearly defines what type of "auscultation device" is claimed—to the exclusion of other types of auscultation devices. *See Promega Corp. v. Life Techs. Corp.*, 773 F.3d 1338, 1350 (Fed. Cir. 2014) ("While the term 'comprising' in a claim preamble may create a presumption that a list of claim elements is nonexclusive, it 'does not reach into each [limitation] to render every word and phrase therein open-ended.'" (citation omitted)), *rev'd and remanded on other grounds*, 137 S. Ct. 734 (2017). Plaintiff is thus correct that by narrowing the recited "auscultation device" to "a stethoscope," the applicant surrendered coverage of non-stethoscope auscultation devices—*i.e.*, "auscultation device[s]" that are not a "stethoscope." (*See* R. 100, Pl.'s Resp. at 17.) In accordance with the Court's claim construction, a simulation or "dummy" stethoscope is not an "auscultation device" to begin with and therefore does not fall within the territory surrendered by this amendment.

Defendant argues that the amendment, when viewed alongside the simultaneous cancellation of claims to a "training stethoscope," did surrender simulation or "dummy" stethoscopes. (R. 82, Mot. for J. Pleadings at 3, 6-7; *see also* R. 106, Reply at 5, 10-11 ("Clearly, cancellation of claims 12-16 is highly relevant to analyzing Estoppel for 'auscultation device.'").) As detailed in the Court's claim construction opinion, the application leading to '141 Patent originally included an independent claim 12 to a "training stethoscope," along with

14

several dependent claims based on claim 12. *Lecat's Ventriloscope*, 283 F. Supp. 3d at 718. In the February 2009 Office Action, the Examiner rejected original claim 12 and all its dependent claims on the basis of prior art. *Id.* In the May 2009 amendment—the same amendment at issue here—the applicant cancelled those claims without explanation. *Id.* Plaintiff acknowledges that the cancellation of claims can, in general, "potentially" trigger an estoppel but argues that the cancellation of the "training stethoscope" claims does not itself create an estoppel and is not relevant to the scope of the estoppel triggered by the "comprising a stethoscope" amendment. (R. 100, Pl.'s Resp. at 12.) The Court agrees.

It is true that prosecution history estoppel can arise from the cancellation of claims during prosecution. *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1141-43 (Fed. Cir. 2004); *see also Pac. Coast Marine Windshields Ltd.*, 739 F.3d at 703 ("In *Honeywell* . . . we held that prosecution history estoppel is not limited to narrowing amendments, but extends as well to claim surrender."). The usual scenario is where the applicant cancels an independent claim for patentability reasons and rewrites one of its dependent claims into independent form. *See, e.g., Felix v. Am. Honda Motor Co.*, 562 F.3d 1167, 1182 (Fed. Cir. 2009); *Honeywell Int'l Inc.*, 370 F.3d at 1141-43; *Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1325-26 (Fed. Cir. 2003). Prosecution history estoppel will presumptively attach because the applicant has effectively added the limitations of the dependent claim to the original independent claim—even though, formally, it has not "amended" the claims. *Felix*, 562 F.3d at 1182 (explaining that by cancelling independent claim and rewriting dependent claim in independent form, the applicant's amendment "had the effect of adding" limitations from the dependent to the broader independent claim); *cf. Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1319-20 (Fed. Cir. 2001) ("We do not discern any legally significant difference

15

between canceling a claim having a broad limitation and replacing it with a claim having a narrower limitation, and amending a claim to narrow a limitation. To do so would place form over substance[.]"), *cert. granted, judgment vacated on other grounds*, 535 U.S. 1109 (2002).

Here, however, the cancelled claims to a "training stethoscope" were not replaced with dependent claims written in independent form, nor were they similar in scope to the claims that were amended. To determine whether the cancellation of the "training stethoscope" claims somehow narrowed the "auscultation device" limitation in claims of entirely different scope, and to then delinate the scope of what was surrendered for purposes of prosecution history estoppel, would be "an impossible inquiry, akin to comparing apples and oranges." *Abbott Labs. v. Baxter Healthcare Corp.*, 660 F. Supp. 2d 882, 889-90 (N.D. Ill. 2009) (declining to apply estoppel to newly added claims based on the cancellation of original claims because the new claims were "drawn to completely different subject matter than the claims as originally filed"), *as amended*, 2010 WL 3894427 (N.D. Ill. Sept. 30, 2010). Defendant cites no authority—and the Court has not located any—that supports or even permits estoppel under these circumstances.

In sum, while the amendment to claim 1 undisputedly narrowed the "auscultation device" limitation and must be presumed to have been made for reasons of patentability, the amendment only surrendered non-stethoscope "auscultation device[s]." In accordance with the Court's claim construction, simulation or "dummy" stethoscopes do not fall within the scope of the term "auscultation device" to begin with and therefore could not have been surrendered. Accordingly, prosecution history estoppel does not preclude Plaintiff's DOE theory as to this claim element.

### III. Vitiation

Because prosecution history estoppel does not bar Plaintiff's DOE theory, the Court turns to Defendant's argument that it is precluded by the doctrine of vitiation. Defendant contends that Plaintiff's DOE theory that simulation or "dummy" stethoscopes are equivalent to the recited

"auscultation device" would entirely vitiate this claim element. (R. 82, Mot. for J. Pleadings at 1, 3, 9-12.) Plaintiff responds that vitiation does not apply because a reasonable jury could find that the accused S-Scope satisfies the "auscultation device" limitation under an appropriate equivalence analysis. (R. 100, Pl.'s Resp. at 4-9.) Plaintiff engages in a lengthy analysis applying both the insubstantial-differences test and the function-way-result test to show that, in its view, a reasonable jury could find equivalence under either test. (*Id.* at 6-9.) Defendant, in reply, likewise applies both the insubstantial-differences test and the function-way-result test to show that, in its view, "no reasonable jury could determine a functioning 'auscultation device' to be equivalent to a device that cannot function to perform auscultation." (R. 106, Reply at 11-17.)

"Vitiation is not an exception to the doctrine of equivalents, but instead a legal determination that the evidence is such that no reasonable jury could determine two elements to be equivalent." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013) (citation and internal quotation marks omitted). A proper vitiation inquiry simply applies the doctrine of equivalents, asking "whether an asserted equivalent represents an insubstantial difference from the claimed element, or whether the substitute element matches the function, way, and result of the claimed element." *Id.* (citation and internal quotation marks omitted); *see also Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1372 (Fed. Cir. 2015) ("The determination of equivalence depends not on labels like 'vitiation' . . . but on the proper assessment of the language of the claimed limitation and the substantiality of whatever relevant differences may exist in the accused structure."). "If no reasonable jury could find equivalence," then the theory of equivalence can be said to vitiate the claim element. *Brilliant Instruments, Inc.*, 707 F.3d at 1347 (citation omitted). "In short, saying that a claim element would be vitiated

17

is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." *Id.*

As the foregoing principles suggest, a proper vitiation analysis requires the Court to undertake a comparison of the accused S-Scope and the "auscultation device" recited in the claims of the '141 Patent and determine whether a reasonable jury could find that they are equivalent under either of the two tests for equivalence. *See Brilliant Instruments, Inc.*, 707 F.3d at 1347. However, the Court has before it no record, let alone a complete record, concerning the accused S-Scope. Instead, as noted above, the parties seem to have simply assumed the Court's familiarity with the S-Scope based on scattered descriptions of it in prior filings. Without a sufficient record, the Court is in no position to undertake an appropriate equivalence analysis or determine whether a reasonable jury could find equivalence. *See Fed. Deposit Ins. Corp.*, 252 F. Supp. 3d at 672 ("The Court cannot consider matters outside [the pleadings and matters subject to judicial notice] without converting the motion into one for summary judgment."). And Defendant cites no case law—and the Court has not found any—undertaking a doctrine of equivalence analysis based solely on the pleadings. Accordingly, the Court concludes that Defendant has failed to meet its burden to establish that it is entitled to judgment as a matter of law on the basis of vitiation.

18

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings (R. 82) is DENIED. The parties shall appear for a status hearing on August 8, 2018, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities.

ENTERED:

Chief Judge Rubén Castillo
United States District Court

Dated: August 1, 2018

19