UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LECAT'S VENTRILOSCOPE,    )
                         )
        Plaintiff,        )
                         )        No. 16 C 5298
    v.                   )
                         )        Chief Judge Rubén Castillo
MT TOOL AND MANUFACTURING, )
                         )
        Defendant.        )

## MEMORANDUM OPINION AND ORDER

Lecat's Ventriloscope ("Plaintiff") filed this suit against MT Tool and Manufacturing ("Defendant") for alleged infringement of U.S. Patent No. 7,645,141 (the "'141 Patent"). (R. 1, Compl.) The trial previously set for August 2018 was recently vacated. (R. 77, Min. Entry; R. 140, Min. Entry.) Both parties have moved for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. (R. 130, Pl.'s Mot.; R. 132, Def.'s Mot.) For the reasons stated below, Plaintiff's motion is granted in part and denied in part, and Defendant's motion is granted in part and denied in part.

## BACKGROUND

For brevity, the Court presumes familiarity with this case, the '141 Patent, the prosecution history of the '141 Patent, and the Court's claim construction ruling, as thoroughly set forth in several prior opinions. *See Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2018 WL 3651592 (N.D. Ill. Aug. 1, 2018) (denying Defendant's motion for judgment on the pleadings); *Lecat's Ventriloscope v. MT Tool & Mfg.*, 283 F. Supp. 3d 702 (N.D. Ill. 2018) (construing disputed claim terms); *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 WL 489416 (N.D. Ill. Feb. 6, 2017) (granting in part and denying in part Defendant's

motion to strike Plaintiff's initial infringement contentions); *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 WL 1362036 (N.D. Ill. Jan. 6, 2017) (denying Defendant's motion to dismiss). In brief, the '141 Patent discloses and claims an "arrangement for auscultation training"—auscultation being "the act of listening to sounds within the body as a method of diagnosis." (R. 54-1, '141 Patent, at [21], [54], col. 1 ll. 13-14.) A stethoscope is an example of an auscultation device. (*Id.* col. 1 ll. 14-18.) Plaintiff alleges that Defendant indirectly infringes the '141 Patent by marketing and selling a stethoscope-like training device, the MT S-Scope ("S-Scope"). (R. 54, Am. Compl. ¶ 9.) Plaintiff alleges both forms of indirect infringement: induced infringement in violation of 35 U.S.C. § 271(b) and contributory infringement in violation of Section 271(c). (*Id.* ¶¶ 6-34; R. 82-2, Pl.'s Am. Infringement Contentions at 3.)

The parties disagreed over the proper construction of various claim terms. *Lecat's Ventriloscope*, 283 F. Supp. 3d at 704. The Court issued claim constructions for the disputed terms on January 11, 2018. (R. 75, Mem. Op.) The Court ordered that the parties complete discovery by June 29, 2018, and set a trial date of August 13, 2018. (*Id.* at 5; R. 77, Min. Entry.) The Court subsequently vacated that trial date. (R. 140, Min. Entry.) On July 30, 2018, the parties filed their present motions for summary judgment.[1] (R. 130, Pl.'s Mot.; R. 132, Def.'s Mot.) The Court addresses each of the parties' arguments in turn below.

## LEGAL STANDARD

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions,

---

[1] The Court notes that both parties' briefs were quite conclusory, devoting very little attention—often less than one page—to each substantive claim or defense and frequently citing no case law at all to support their respective positions. Suffice it to say, the Court expects more from members of the bar of this Court.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted). In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citation omitted).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (citation and internal quotation marks omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [its] favor." *Id.* (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "[S]peculation and conjecture" also cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary

judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

In deciding a summary judgment motion, the Court cannot weigh conflicting evidence, assess the credibility of the witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011). Instead, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Anderson*, 477 U.S. at 249).

## ANALYSIS

### I.      Plaintiff's Motion

As a preliminary matter, the Court must dispel Plaintiff's misconception of its burden on summary judgment. Plaintiff asserts that, because U.S. patents are presumed valid, "a patentee who moves for summary judgment that its patent is not invalid need not introduce any evidence in order to prevail." (R. 130, Pl.'s Mot. at 5.) Without any argument about the merits of Defendant's invalidity defenses, Plaintiff then declares that it "has met its burden" as the party moving for summary judgment, and that the "burden now shifts to Defendant to produce evidence from which a jury may find the '141 Patent invalid." (*Id.* at 6.) Plaintiff appears to believe that the presumption of validity alone is sufficient to discharge its burden on summary judgment, but Plaintiff misunderstands its initial burden as the moving party.

It is true that the claims of a U.S. patent are presumed valid and that the party contesting validity bears the ultimate burden of proving invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Limited P'ship*, 564 U.S. 91, 95 (2011). Consistent with these principles, a patentee moving for summary judgment on an accused infringer's invalidity defenses need not present any "factual evidence" to prevail. *Massey v. Del Labs., Inc.*, 118 F.3d

4

1568, 1573 (Fed. Cir. 1997); *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that "[w]here the nonmovant bears the ultimate burden of persuasion on a particular issue," Rule 56 "does not require the moving party to support its motion with affidavits or other similar materials *negating* the opponent's claim" (citation and internal quotation marks omitted)). But it does not follow that the presumption of validity alone discharges Plaintiff's initial burden on summary judgment. Instead, "a party seeking summary judgment *always* bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (emphasis added); *see also Outlaw*, 259 F.3d at 837 ("The party moving for summary judgment carries the initial burden of production to identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996))). That means, in this context, that a patentee moving for summary judgment of no invalidity "must show that the [defendant] . . . failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001); *see also Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1363 (Fed. Cir. 2005) (concluding that "the district court erred by treating [the accused infringer], not [the patentee], as the party moving for summary judgment" on the issue of invalidity because "it was [the patentee] who moved for summary judgment" and, accordingly, the accused infringer "only needed to show the existence of a genuine issue of material fact in order to preclude summary judgment for [the patentee]"). A patentee moving for summary judgment on an accused infringer's invalidity

defense cannot, as Plaintiff supposes, merely stand on the presumption of validity and demand that the accused infringer put forth all its evidence of invalidity; the patentee must go further and "identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. With that clarification, the Court turns to the substance of Plaintiff's motion.

## A.     Defendant's Invalidity Contentions

Plaintiff argues first that it is entitled to summary judgment on Defendant's defenses of anticipation and obviousness under 35 U.S.C. §§ 102 and 103 because Defendant's final invalidity contentions are inadmissible. (R. 130, Pl.'s Mot. at 6-8.) Plaintiff contends that Defendant's invalidity contentions are inadmissible because they relied on a claim construction for the term "auscultation device" that was not adopted by the Court, as shown by Defendant's prefatory statement in the contentions that "[t]hese invalidity contentions are based upon Defendant's understand[ing] of how Plaintiff believes the claims should be construed." (*Id.* at 6.) Plaintiff does not address the merits of the prior art relied on by Defendant, but reasons that if the invalidity contentions are stricken, Defendant would not "have any admissible evidence on anticipation and obviousness" and summary judgment is therefore warranted on these defenses. (*Id.* at 8.)

In response, Defendant argues that it has formulated its invalidity contentions "in response to Plaintiff's asserted infringement theory under the doctrine of equivalents." (R. 148, Def.'s Resp. at 2.) Defendant contends that "if Plaintiff is able to assert for infringement purposes that the '141 Patent claims can . . . encompass a non-functioning, simulation (or dummy stethoscope" under the doctrine of equivalents, "then Defendant must be allowed to assert that such claims . . . are invalid as being anticipated or obvious" based on the same theory. (*Id.*)

Although the doctrine of equivalents[2] may be relied on to show infringement, the defense

of anticipation generally cannot rely on the doctrine of equivalents; to put it differently, there is

no such thing as "anticipation by equivalents."[3] *See Siemens Med. Sols. USA, Inc. v. Saint-*

*Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1292 n.1 (Fed. Cir. 2011) (Prost, J.,

dissenting) (explaining that the U.S. Court of Appeals for the Federal Circuit has rejected the

theory of "anticipation by equivalents"); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236

(Fed. Cir. 1989) (explaining that "jury had erroneously been instructed that anticipation may be

shown by equivalents"); *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 698 (E.D. Tex.

2014) ("It is not disputed that 'anticipation by equivalents' is a legally deficient argument[.]");

*Back in Five, LLC v. Infinite Int'l Inc.*, No. CV1100243, 2012 WL 13008293, at *4 (C.D. Cal.

Sept. 11, 2012) ("[T]he Federal Circuit has repeatedly stated that the doctrine of equivalents is

inapplicable to the 'anticipation' analysis."). Accordingly, Defendant cannot rely on the doctrine

of equivalents for its defense of anticipation under 35 U.S.C. § 102.

However, equivalence may be relied on to show obviousness under 35 U.S.C. § 103. *See*

*Richardson*, 868 F.2d at 1236 (noting that an equivalence theory "is pertinent to obviousness

under Section 103"); *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 748 (Fed. Cir. 1987)

("All infringements of a device do not 'anticipate' in this sense. Some may be infringements

under the doctrine of equivalents which, if one wished to draw a parallel, is somewhat akin to

obviousness."). Accordingly, Defendant's defenses based on obviousness are not defective for

---

[2] Under the doctrine of equivalents, even if an accused product does not satisfy every element of a patent claim literally, it may nevertheless be found to infringe if it includes the equivalent of the missing claim element(s). *Intendis GMBH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1360 (Fed. Cir. 2016).

[3] The only exception appears to be in the context of means-plus-function claim limitations, because under 35 U.S.C. § 112 the literal scope of such limitations includes "equivalents" of the structure disclosed in the specification. *See In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990) (explaining in the context of a means-plus-function limitation that "[t]he disclosed and prior art structures are not identical, but the claim may nonetheless be anticipated").

relying, to the extent that they do, on Plaintiff's theory that non-functioning, simulation or "dummy" stethoscopes satisfy the '141 Patent claims under the doctrine of equivalents.

But even concluding that, as general matter, Defendant's defense of anticipation cannot rely on the doctrine of equivalents, the problem with Plaintiff's motion is that it has not identified with any particularity which aspects of Defendant's anticipation defense—*i.e.*, which prior art references, or prior art products, if any—are dependent upon this equivalence theory. The Court will not broadly presume that every prior art reference asserted by Defendant necessarily relies on Plaintiff's theory of equivalence. Plaintiff does not identify with any specificity those that do, and "it is not the job of the trial judge to do the parties' work for them." *Int'l Administrators, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985). Without a more crystallized argument by Plaintiff, the Court is unable to distinguish between permissible and impermissible theories of anticipation, and therefore finds that Plaintiff is not entitled to summary judgment on this basis.

**B.    Defendant's Lack of an Invalidity Expert**

Plaintiff next argues that it is entitled to summary judgment on all of Defendant's invalidity defenses because "Defendant has no expert witness for any of its defenses" and therefore no competent witness to provide testimony from the perspective of a person of ordinary skill in the art ("POSITA"). (R. 130, Pl.'s Mot. at 8-12.) Plaintiff points out that Defendant has not disclosed any experts or served any expert reports in accordance with the Federal Rules of Civil Procedure and this District's local patent rules. (*Id.* at 8.) Plaintiff further claims that Thomas Lechner ("Lechner"), who is Defendant's principal and who Defendant identified in interrogatories as having "the most knowledge" as to invalidity of the '141 Patent, cannot provide POSITA testimony because he admitted in his deposition to having no relevant training or experience. (*Id.* at 8-9.) Plaintiff contends that because the perspective of a POSITA is critical

to all of Defendant's invalidity defenses, and Defendant has no competent witness to provide such a perspective, summary judgment is warranted on all of these defenses.

Defendant concedes that it has not disclosed any experts or served expert reports as to invalidity, but contends that no expert testimony is needed. (R. 148, Def.'s Resp. at 2-6; R. 149, Def.'s Resp. to Facts ¶ 16.) Defendant claims that, given the nature of the technology in this case, the invalidity issues are well within the comprehension of lay jurors. (R. 148, Def.'s Resp. at 4-6.) Defendant also argues that Plaintiff relies on a "self-serving, conclusory opinion" of the level of ordinary skill in the art in order to exclude Lechner as a potential POSITA, and that it also has a non-infringement expert who could provide POSITA testimony if necessary. (*Id.* at 6.) The Court addresses each group of defenses in turn.

### 1. Defenses of Anticipation and Obviousness

The Court agrees with Defendant that, given the simplicity of the technology in this case, the lack of expert testimony by Defendant is not fatal, at this stage, to its invalidity defenses of anticipation and obviousness. Although technical experts frequently provide explanatory testimony regarding prior art, the U.S. Court of Appeals for the Federal Circuit has frequently reiterated that "[t]here is no invariable requirement that a prior art reference be accompanied by expert testimony." *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1374 (Fed. Cir. 2012) (citation omitted); *see also Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1348 (Fed. Cir. 2017) ("[W]e have recognized that some cases involve technologies and prior art that are simple enough that no expert testimony is needed."); *In re Brimonidine Patent Litig.*, 643 F.3d 1366, 1376 (Fed. Cir. 2011) ("There is no invariable requirement that a prior art reference be accompanied by expert testimony."), *as corrected* (Aug. 8, 2011). Rather, "expert testimony is not required when the references and the invention are easily understandable." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010). In *Wyers v.*

*Master Lock Co.*, 616 F.3d 1231 (Fed. Cir. 2010), for example, the district court denied the

defendant's motion for judgment as a matter of law that the asserted patent claims were invalid

as obvious. *Id.* at 1233. The Federal Circuit reversed, holding that the asserted claims would

have been obvious as a matter of law. *Id.* In so doing, the court rejected the patentee's argument

that a prior art reference asserted by the defendant "could not be considered because [the

defendant] introduced no expert testimony directed to [it]," explaining that "expert testimony is

not required when the references and the invention are easily understandable." *Id.* at 1242.

Instead, the court explained, "the legal determination of obviousness may include recourse to

logic, judgment, and common sense, in lieu of expert testimony." *Id.* at 1239. Similarly, in

*Intercontinental Great Brands LLC v. Kellogg North America Company*, 869 F.3d 1336 (Fed.

Cir. 2017), the district court granted summary judgment to the accused infringer that the asserted

patent was invalid as obvious. *Id.* at 1339. The Federal Circuit affirmed notwithstanding the

absence of expert testimony on motivation to combine the prior art references, explaining that

"we have recognized that some cases involve technologies and prior art that are simple enough

that no expert testimony is needed." *Id.* at 1348.

Although Plaintiff argues otherwise, (*see* R. 152, Reply in Supp. Pl.'s Mot. at 5-7), the

technology in this case is simple and easy to understand. The essence of the invention disclosed

in the '141 Patent is a modified stethoscope designed to help train doctors in listening for and

recognizing sounds emanating from the human body. None of the material elements of the

claimed invention are so complex or inaccessible to lay understanding that expert testimony is

*per se* required. The absence of expert testimony is therefore not fatal to Defendant's defenses of

obviousness and anticipation. *See Intercontinental Great Brands LLC*, 869 F.3d at 1348; *Wyers*,

616 F.3d at 1242; *compare Finjan, Inc. v. Blue Coat Sys., LLC*, 283 F. Supp. 3d 839, 854-55

(N.D. Cal. 2017) (granting summary judgment of no invalidity to patentee based on defendant's failure to disclose any expert opinion as to invalidity, reasoning that "[t]his is not a case where the references and [the] invention[] are easily understandable without the need for expert explanatory testimony" (citation and internal quotation marks omitted)); *Invista N. Am. S.À.R.L. v. M & G USA Corp.*, 951 F. Supp. 2d 626, 652 (D. Del. 2013) (granting summary judgment of no invalidity to patentee because defendant "has no expert testimony regarding the combination of [prior art] references," explaining that "the field of polymer chemistry is a complex area of technology"). Accordingly, the Court denies Plaintiff's motion for summary judgment as to Defendant's invalidity defenses of anticipation and obviousness.

### 2. Defense of Indefiniteness

Defendant's defense of indefiniteness under 35 U.S.C. § 112 requires a more nuanced approach. A patent is invalid as indefinite under Section 112 "if its claims, read in light of the specification . . . and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Because "patents are not addressed to lawyers, or even to the public generally, but rather to those skilled in the relevant art," the issue of definiteness "is to be evaluated from the perspective of someone skilled in the relevant art." *Id.* at 908-09 (citation and internal quotation marks omitted).

Read generously, Defendant's final invalidity contentions assert three distinct grounds of indefiniteness: (1) the claims are impermissible hybrid or "mixed-mode" claims that recite both an apparatus and the method steps of using the apparatus in a single claim; (2) the claim 1 element "the device for transmitting" lacks an antecedent basis; and (3) the "human operator" limitation in claim 1 is indefinite. (R. 148-1, Def.'s Am. Final Contentions at 11-13.) The Court addresses each theory in turn.

When a claim mixes statutory classes of invention by reciting both an apparatus and method steps of using the apparatus, the claim is indefinite because "it is unclear when infringement occurs." *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1335 (Fed. Cir. 2014); *see also IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) ("[A]s a result of the combination of two separate statutory classes of invention, a manufacturer or seller of the claimed apparatus would not know . . . whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus."). Plaintiff cites no cases for the proposition that expert testimony is necessary to show that a claim is indefinite due to hybrid claiming. Indeed, in both *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005), and *H-W Technology, L.C. v. Overstock.com, Inc.*, 758 F.3d 1329 (Fed. Cir. 2014)—which are frequently cited for the rule against hybrid claiming—the Federal Circuit affirmed the district court's summary judgment rulings of indefiniteness without any reference to supporting expert testimony. *H-W Tech., L.C.*, 758 F.3d at 1335-36; *IPXL Holdings, L.L.C.*, 430 F.3d at 1383-84. Instead, both the Federal Circuit and the district court in those cases relied solely on the plain language of the claims to conclude that they constituted hybrid claims. *See H-W Tech., L.C.*, 758 F.3d at 1335-36; *IPXL Holdings, L.L.C.*, 430 F.3d at 1384; *H-W Tech., LC v. Overstock.com. Inc.*, 973 F. Supp. 2d 689, 697 (N.D. Tex. 2013) (district court opinion); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 333 F. Supp. 2d 513, 543 (E.D. Va. 2004) (district court opinion). Accordingly, the Court concludes that expert testimony is not necessarily required because this type of indefiniteness depends only on whether the claim, on its face, recites both an apparatus and method steps of using the apparatus. *See Motion Games, LLC v. Nintendo Co.*, No. 6:12-CV-878, 2015 WL 11170167, at *3 (E.D. Tex. Jan. 16, 2015) (concluding that "expert evidence is

not necessary" to resolve motion for summary judgment that asserted claims were indefinite for impermissibly claiming both apparatus and method steps, rejecting plaintiff's argument that "[d]efendants' motion should be denied solely on the basis that [they] failed to offer expert evidence regarding . . . the perspective of a person of skill in the art"), *report and recommendation adopted*, 2015 WL 11170729 (E.D. Tex. Apr. 22, 2015). Because expert testimony is not *per se* required to establish impermissible hybrid claiming, the lack of expert testimony from Defendant is not fatal. Plaintiff's motion for summary judgment is therefore denied as to this defense.

Turning to Defendant's second theory, "[t]he requirement of antecedent basis is a rule of patent drafting," but the absence of an antecedent basis for a claim element "does not always render a claim indefinite." *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) (citation omitted); *see also Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008) (noting "well-settled rule that claims are not necessarily invalid for a lack of antecedent basis"). Instead, the question is whether, despite the absence of antecedent basis, the scope of a claim would be reasonably certain to "persons of ordinary skill when read in light of the specification." *Energizer Holdings, Inc.*, 435 F.3d at 1370. Given the contextual nature of this inquiry, the Court concludes that expert testimony is necessary. *See Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, No. CA 10-63-LPS, 2012 WL 2175788, at *5 (D. Del. June 14, 2012) (denying motion summary judgment of invalidity based on lack of antecedent basis because plaintiff's expert opined that claim scope would be ascertainable despite the lack of an express antecedent basis); *cf. Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1313 (Fed. Cir. 2012) ("[T]he sufficiency of the disclosure of algorithmic structure must be judged in light of what one of ordinary skill in the art would understand the disclosure to

impart[.]" (citation omitted)).[4] Without any affirmative expert testimony, Defendant will be unable to offer the perspective of a POSITA.[5] Plaintiff's motion is accordingly granted as to this aspect of Defendant's indefiniteness defense.

The Court reaches the same conclusion for Defendant's third theory—that the "human operator" element of claim 1 is indefinite. (*See* R. 148-1, Def.'s Am. Final Contentions at 13.) Defendant claims that this term is indefinite because "[o]ther than in the claims, nowhere else in the '141 patent is a 'human operator' even mentioned." (*Id.*) Because this garden-variety theory of indefiniteness "requires a determination whether those skilled in the art would understand what is claimed," *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1344 (Fed. Cir. 2010) (citation omitted), the Court concludes that expert testimony is necessary. Because Defendant has no expert to testify as to the indefiniteness of this term, Plaintiff's motion is granted as to this aspect of Defendant's defense of indefiniteness.

### 3. Defendant's Remaining Invalidity Defenses

Finally, Plaintiff argues that the lack of expert testimony from Defendant is likewise fatal to its remaining invalidity defenses of patent-ineligible subject matter, lack of written description, lack of enablement, and failure to set forth the best mode under 35 U.S.C. §§ 101

---

[4] Given the dearth of case law on this issue, the Court finds instructive the Federal Circuit's precedent distinguishing between two types of indefiniteness for computer-implemented means-plus-function claim limitations: "cases in which the specification discloses no algorithm; and second, cases in which the specification does disclose an algorithm but a defendant contends that disclosure is inadequate." *Noah Sys., Inc.*, 675 F.3d at 1313. No expert testimony is required to prove the first type of indefiniteness, whereas in the latter case, "the sufficiency of the disclosure of algorithmic structure must be judged in light of what one of ordinary skill in the art would understand the disclosure to impart." *Id.* (citation omitted). In the Court's view, Defendant's argument that a lack of antecedent basis for "the device for transmitting" renders the claims indefinite is more akin to the latter case.

[5] The Court notes that Defendant does not actually argue that Lechner would qualify as a POSITA. Furthermore, although Defendant suggests that its non-infringement expert could provide POSITA testimony, (*see* R. 148, Def.'s Resp. at 6), any such testimony as to *invalidity* would presumably be outside the scope of his disclosed opinions.

and 112. (R. 130, Pl.'s Mot. at 11-12.) However, Plaintiff devotes just 1-2 sentences to each of these four defenses and cites no case law showing that expert testimony is required as to any of these defenses. (*See id.*) The Court considers such cursory and undeveloped arguments to be waived. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived[.]"); *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (same). Accordingly, Plaintiff's motion is denied as to these defenses.

### C.    Defendant's Lack of an Unenforceability Expert

Plaintiff advances a similar argument as to Defendant's defense that the '141 Patent is unenforceable due to inequitable conduct. (R. 130, Pl.'s Mot. at 12-13.) "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011); *see also In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1272 (Fed. Cir. 2018) (same). The accused infringer must prove by clear and convincing evidence that the patent applicant (1) "misrepresented or omitted material information" and (2) did so "with the specific intent to deceive the" U.S. Patent & Trademark Office ("PTO") into granting a patent. *Therasense, Inc.*, 649 F.3d at 1287. Plaintiff contends that it is entitled to summary judgment on this defense because Defendant has no expert witness to testify to the materiality of Plaintiff's alleged misrepresentations or omissions in procuring the '141 Patent. (R. 130, Pl.'s Mot. at 12-13.)

Defendant, in response, contends only that no expert is needed to support its inequitable conduct defense. (R. 148. Def.'s Resp. at 3, 5.) Defendant maintains that, just as with its invalidity defenses, the issues raised by this defense "are easily understood" such that no expert testimony is required. (*Id.* at 5.)

Information is considered material for purposes of inequitable conduct if "there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1359 (Fed. Cir. 2010) (citation and internal quotation marks omitted); *see also Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 972 (Fed. Cir. 2010) ("Information is material where a reasonable examiner would find it important to a determination of patentability."). Accordingly, "an appropriate expert on [materiality] could be an individual who has knowledge of and experience with the procedures of the PTO." *Aevoe Corp. v. AE Tech Co.*, No. 2:12-CV-00053, 2014 WL 4182343, at *2 (D. Nev. Aug. 20, 2014); *see also Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, No. Civ. A. 08-464, 2010 WL 3907490, at *2 (D. Del. Sept. 21, 2010) (allowing defendant's expert to offer testimony concerning "the practices and procedures of the PTO" because "[t]he law permits experts in patent cases to offer such testimony"). However, in the one page that it devotes to this argument, Plaintiff cites no cases supporting the proposition that a materiality expert is *per se* required to prevail on an inequitable conduct defense.[6] Indeed, in some Districts, experts are altogether forbidden from opining on inequitable conduct or materiality. *See, e.g., Brigham & Women's Hosp. Inc. v. Teva Pharm. USA, Inc.*, No. Civ. A. 08-464, 2010 WL 3907490, at *2 (D. Del. Sept. 21, 2010) (explaining that "[t]he law of this district is clear that experts in patent cases may not opine on whether a party engaged in inequitable conduct" or "discuss whether certain information was material to a pending patent application"). Plaintiff has entirely failed to show

---

[6] In the one case cited by Plaintiff, the court expressly rejected the argument that the Federal Circuit had stated that expert testimony was required to prove materiality. *See Abbott Labs. v. Syntron Bioresearch Inc.*, No. 98-CV-2359, 2001 WL 34082555, at *6 (S.D. Cal. Aug. 24, 2001) ("The *Life Technologies [Inc., v. Clontech Laboratories, Inc.*, 224 F.3d 1320 (Fed. Cir. 2000)] Court did not state that expert testimony was need[ed] to prove materiality.").

that it is entitled to judgment as a matter of law based on the absence of an expert to support

materiality as part of Defendant's inequitable conduct defense, and Plaintiff's motion is

accordingly denied as to this defense.

## II.     Defendant's Motion

The Court turns next to Defendant's cross-motion for summary judgment, in which

Defendant moves for summary judgment of unenforceability, invalidity, and non-infringement of

the '141 Patent. (R. 132, Def.'s Mot.) The Court addresses each in turn.

### A.     Unenforceability

Defendant has asserted inequitable conduct as a defense and counterclaim against the

enforceability of the '141 Patent. (See R. 55, Def.'s Answer & Aff. Defs. at 16-17, 21.) As noted

above, "[i]nequitable conduct is an equitable defense to patent infringement that, if proved, bars

enforcement of a patent." *Therasense, Inc.*, 649 F.3d at 1285. It requires proof by clear and

convincing evidence that the patent applicant both "misrepresented or omitted material

information" and did so "with the specific intent to deceive the PTO" into granting the patent. *Id.*

at 1287. Both materiality and intent are questions of fact. *Leviton Mfg. Co.*, 606 F.3d at 1368.

The Federal Circuit has cautioned that "[a]lthough it is not impermissible to grant

summary judgment of inequitable conduct," courts should be careful "in making an inequitable

conduct determination at the summary judgment stage." *M. Eagles Tool Warehouse, Inc. v.

Fisher Tooling Co.*, 439 F.3d 1335, 1340 (Fed. Cir. 2006). Put differently, "[d]etermining at

summary judgment that a patent is unenforceable for inequitable conduct is permissible, but

uncommon." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir.

2006); *see also Leviton Mfg. Co.*, 606 F.3d at 1366 (Prost, J., dissenting) (noting that Federal

Circuit precedent establishes that a summary ruling of inequitable conduct "is reserved for a rare

case"); *Manuli Stretch USA, Inc. v. Pinnacle Films, Inc.*, 749 F. Supp. 2d 764, 772 (E.D. Tenn.

2010) (noting that inequitable conduct is "not particularly well-suited for resolution on a motion for summary judgment"). The element of intent in particular "requires the fact finder to evaluate all the facts and circumstances in each case" and "[s]uch an evaluation is *rarely* enabled in summary proceedings." *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993) (citation omitted).

Given the fact-intensive nature of the inquiry, the Court readily concludes that Defendant has not carried its burden of showing that this is one of those rare cases requiring summary judgment of inequitable conduct. Among other things, Defendant has failed to establish that there is no genuine dispute of material fact as to the element of intent. "Intent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *M. Eagles Tool Warehouse, Inc.*, 439 F.3d at 1340; *see also Latentier, LLC v. Int'l Paper Co.*, 725 F. Supp. 2d 795, 802 (E.D. Wis. 2010) ("Failing to disclose something to the PTO—even something material—is not inequitable conduct unless the applicant intended to deceive the PTO."). Defendant relies exclusively on Plaintiff's failure to disclose a prior art Nasco LF01142U "Life/form Auscultation Trainer and Smartscope" ("Nasco LF01142U SmartScope") to the PTO during the pendency of the application for the '141 Patent. (R. 133, Def.'s Mem. at 6-10.) To show intent to deceive, Defendant relies entirely on a few snippets of testimony from Dr. Lecat, Plaintiff's principal and the named inventor on the '141 Patent, who stated that he believed the Nasco LF01142U SmartScope "sounded very similar" to Plaintiff's claimed invention and that he was initially "concerned" about the similarities. (*Id.* at 9.) But in that same testimony, Dr. Lecat explained that upon investigation, there were, at least in his mind, material differences between the Nasco device and Plaintiff's invention. At the very least, a genuine dispute of fact exists on this issue, and Defendant's motion for summary

judgment of inequitable conduct must be denied. *See Polara Eng'g, Inc. v. Campbell Co.*, No. 13-00007-CJC, 2015 WL 12914378, at *1 (C.D. Cal. Apr. 27, 2015) (denying accused infringer's motion for summary judgment of inequitable conduct where "facts of materiality or intent are reasonably disputed"); *Latentier, LLC*, 725 F. Supp. 2d at 802 (denying accused infringer's cross motion for summary judgment of inequitable conduct, concluding that material issue of fact existed as to intent despite named inventor "associat[ing]" prior art publication and prior public use "with the [patented] invention").

### B.    Invalidity Under 35 U.S.C. § 101

Defendant next moves for summary judgment of invalidity of the '141 Patent on four separate grounds. (R. 133, Def.'s Mem. at 10-15.) First, Defendant argues that the '141 Patent is invalid under 35 U.S.C. § 101 for being directed to patent-ineligible subject matter. (*Id.* at 10-12.) Under Section 101, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (citation omitted). Defendant contends that the claims of the '141 Patent are "directed to abstract ideas" because they "claim the mental steps of a human operator." (*Id.* at 10.) However, Defendant's two-sentence analysis is so cursory and superficial that the Court rejects its argument on this basis alone.[7] *See M.G. Skinner & Assocs. Ins. Agency, Inc.*, 845 F.3d at 321 ("Perfunctory and undeveloped arguments are waived[.]"). Accordingly, Defendant's motion for summary judgment of invalidity under Section 101 is denied.

---

[7] Indeed, Defendant does not even recite or analyze any claims of the '141 Patent or compare them to claims that have been invalidated or upheld under Section 101. Instead, after briefly explaining the U.S. Supreme Court's two-step framework for evaluating patent-eligibility under *Alice Corp. Pty. v. CLS Bank International*, 573 U.S. 208 (2014), Defendant's entire analysis is stated in two sentences: "Under the above [cases], the claims of the '141 patent are clearly invalid under 35 U.S.C. 101. There is no inventive concept in the '141 patent, which does nothing more than simply recite well-understood, routine, conventional activity for auscultation training." (R. 133, Def.'s Mem. at 12.)

## C. Invalidity Under 35 U.S.C. § 102

Next, Defendant argues that the '141 Patent is invalid as anticipated under 35 U.S.C.

§ 102 by "prior art Nasco products." (R. 133, Def.'s Mem. at 12.) "A patent is invalid for

anticipation under [Section] 102 if a single prior art reference discloses all limitations of the

claimed invention." *CRFD Research, Inc. v. Matal*, 876 F.3d 1330, 1338 (Fed. Cir. 2017).

Defendant bears the burden of proving invalidity by clear and convincing evidence. *Microsoft

Corp.*, 564 U.S. at 95. Defendant relies on the same Nasco LF01142U SmartScope described

above as anticipatory prior art. (R. 133, Def.'s Mem. at 12-13.) Upon review, however, Defendant

has failed to show by clear and convincing evidence that there is no genuine dispute that every

limitation of claim 1 is present in the Nasco device.[8] Defendant's cursory, one-page analysis

sheds little light on the Nasco LF01142U SmartScope and how it meets each limitation of claim 1.[9]

For the claim 1 element "a signal generator capable of generating an audio signal," for example,

Defendant simply refers parenthetically to "remote control in operator's hand," but does not

explain—or cite to evidence showing—how the remote control includes a signal generator. (*See id.* at

12.) Similarly, for the element "a transmitter associated with the device for transmitting an audio

signal corresponding to the at least one sound," Defendant simply states "in the manikin"—again

without explanation or citation to any evidence. (*See id.*) Simply put, Defendant has failed to carry its

---

[8] Although Defendant states in its motion that the Nasco product "anticipates the *claims*" (plural) of the '141 Patent, (R. 133, Def.'s Mot. at 12 (emphasis added)), Defendant in fact only addresses claim 1, (*see id.* (concluding that the Nasco product "clearly anticipates every element of Claim 1")). In an anticipation analysis, each patent claim must be evaluated independently. *See Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 974 (Fed. Cir. 2010) ("Although [Section] 102 refers to 'the invention' generally, the anticipation inquiry proceeds on a claim-by-claim basis."). Therefore, Defendant has entirely failed to address anticipation of any other asserted claims.

[9] As with its Section 101 defense, Defendant's anticipation analysis is quite cursory, comprising just over one page and citing no facts from its Local Rule 56.1 statement of material facts (which in any event does not contain any pertinent facts). (*See* R. 133, Def.'s Mem. at 12-13.) Nevertheless, because Defendant engages in slightly more substantive analysis, the Court has addressed this argument on its merits rather than reject it for being undeveloped.

burden of showing that there is no genuine dispute that clear and convincing evidence exists that each and every limitation of claim 1 is present in the Nasco LF01142U SmartScope. Accordingly, Defendant's motion for summary judgment of anticipation is denied.

### D.  Invalidity Under 35 U.S.C. § 112

Defendant next argues that claims 1-11 of the '141 Patent are invalid as indefinite under 35 U.S.C. § 112 because they each "claim both an apparatus and the method steps of using the apparatus." (R. 133, Def.'s Mot. at 13-14.) Plaintiff responds that claims 1-11 are not apparatus claims at all, but rather method claims that merely "recite the physical structures or components [with] which the method is performed," and that method claims may recite structure in this fashion without the claim being indefinite under Section 112. (R. 144, Pl.'s Resp. at 12-14.) Plaintiff is correct that the rule against so-called hybrid claiming does not forbid method claims that merely "recite the physical structures of a system in which the claimed method is practiced." *Microprocessor Enhancement Corp.*, 520 F.3d at 1374; *see also In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011) (distinguishing *Microprocessor Enhancement Corp.* on the ground that "[t]hat case dealt with a method claim that recited structural elements"); *Collaboration Props., Inc. v. Tandberg ASA*, No. C05-01940, 2006 WL 1752140 (N.D. Cal. 2006) (denying accused infringer's motion for summary judgment of indefiniteness due to hybrid claiming, concluding that method claims reciting "A method of conducting a teleconference using a system including:" followed by recitation of system components as well as method steps were not indefinite because they permissibly claimed a method that had to be performed with certain structure). However, a threshold issue is whether claim 1 and its dependent claims (claims 2-11) are in fact method claims, as Plaintiff contends, or are instead apparatus claims, as Defendant assumes.

The Court agrees with Defendant that claim 1 of the '141 Patent and its dependents are all apparatus claims. Under 35 U.S.C. § 101, only four categories of inventions are patentable: "process[es], machine[s], manufacture[s], or composition[s] of matter." *In re Nuijten*, 500 F.3d 1346, 1353 (Fed. Cir. 2007); *see also id.* at 1354 ("The four categories together describe the exclusive reach of patentable subject matter. If a claim covers material not found in any of the four statutory categories, that claim falls outside the plainly expressed scope of § 101[.]"). A machine claim—often referred to as an "apparatus" or "system" claim—covers "a concrete thing, consisting of parts, or of certain devices and combination of devices." *Id.* at 1355 (citation omitted); *see also SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332 (Fed. Cir. 2010) ("We have defined a machine as a concrete thing, consisting of parts, or of certain devices and combination of devices." (citation and internal quotation marks omitted)). A process or "method" claim, by contrast, "cover[s] an act or series of acts." *In re Nuijten*, 500 F.3d at 1355; *see also Diamond v. Diehr*, 450 U.S. 175, 183 (1981) (describing process under Section 101 as "an act, or a series of acts" (citation omitted)); *In re Ferguson*, 558 F.3d 1359, 1366 (Fed. Cir. 2009) ("Applicants' . . . claims are not directed to *processes*, as no act or series of acts is required." (citation and internal quotation marks omitted)). The parties have not cited, and the Court has not located, any cases squarely resolving a dispute over whether a patent claim was for an apparatus or method.[10] Nevertheless, a review of claims 1-11 shows they are plainly not directed to an "act

---

[10] This is understandable. Ordinarily, it is unnecessary to resolve which class of subject matter an invention falls into, because if it falls into at least one category, it is patentable under Section 101. *See Ferguson*, 558 F.3d at 1365 ("Although we need not resolve the particular class of statutory subject matter into which Applicants' . . . claims fall, the claims must satisfy at least one category."); *Nuijten*, 500 F.3d at 1354 ("If . . . a court determines that a claim encompasses either a process or machine but is unsure which category is appropriate, it need not resolve the ambiguity."). But here the inquiry is indefiniteness under Section 112 rather than patentability under Section 101, and that inquiry is significantly affected by the proper classification of the claims. Accordingly, this case squarely presents an apparently unusual dispute over which statutory class of invention patent claims fall in.

or series of acts," but rather to a combination of concrete devices and components and, as such, are apparatus claims.

The preamble of independent claim 1 recites "[a]n arrangement for auscultation training," and the preambles of the dependent claims, claims 2-11, recite "the arrangement of claim [X]." Although "arrangement" is an unusual preambulatory term,[11] the body of each claim is dominated by obviously structural elements describing a set of concrete devices and their constituent parts. For example, the five paragraphs making up the body of claim 1 recite "a signal generator," "a transmitter," "an auscultation device," "a receiver," and "a speaker," respectively. The dependent claims add purely structural elements or detail to claim 1: claim 2 adds "a head piece" and structural details regarding the location of the speaker, claim 3 adds structural details about the composition of the head piece, claim 4 adds structural details about the location of the receiver, claim 5 adds a narrowing classification of the auscultation device, claim 6 adds a narrowing classification of the transmitter, claim 7 adds narrowing details about the capabilities of the transmitter, and so forth. These claim elements all relate to "concrete thing[s]" or "devices," and their parts. *SiRF Tech., Inc.*, 601 F.3d at 1332 (citation omitted). It is

---

[11] Empirically, the three most common preambulatory terms by far are "method," "apparatus," and "system." *See* Dennis Crouch, *Patent Types: Method, Non-Method, or Both*, PATENTLYO (Jan. 27, 2014), https://patentlyo.com/patent/2014/01/patent-types-method.html.

thus obvious that the claims are to a machine or apparatus.[12] The Court is not persuaded by
Plaintiff's citation to *Animal Care Systems, Inc. v. Hydropac/Lab Products, Inc.*, No. 13-CV-
00143, 2015 WL 535566 (D. Colo. Feb. 9, 2015). (*See* R. 144, Pl.'s Resp. at 14.) Although the
court in that case concluded that a claim reciting "A system for facilitating the delivery of water
to a plurality of cage level barrier-type cages" was "exclusively a 'method' claim," *Animal Care
Sys., Inc.*, 2015 WL 535566, at *11, the claim itself recited no method steps and it is not evident
how the court reached this conclusion. The Court therefore rejects Plaintiff's argument that
claims 1-11 are method claims and holds that they are instead apparatus claims.

    Having concluded that these claims are apparatus claims, the Court next considers
whether they impermissibly recite method steps of using the apparatus. As noted above, a claim
that mixes statutory classes of invention by reciting both an apparatus and method steps of using
the apparatus is indefinite under Section 112—the reason being that "it is unclear when
infringement occurs." *H-W Tech., L.C.*, 758 F.3d at 1335; *see also IPXL Holdings, L.L.C.*, 430
F.3d at 1384 (holding that a claim that "recite[d] both a system and the method for using that
system" was invalid as indefinite under Section 112 because it "does not apprise a person of
ordinary skill in the art of its scope"). With such a claim, "a manufacturer or seller of the claimed
apparatus would not know . . . whether it might also be liable for contributory infringement

---

[12] The Court's conclusion is reinforced by the language of the other claims in the '141 Patent and
language in the specification. While claims 1-11 are directed to "an arrangement for auscultation
training," claim 12 and its dependent claims are, in stark contrast, directed to "[a] *method* for simulating
auditory findings in an auscultation device" (claim 12) or "the *method* of claim [X]" (claims 13-16). The
specification similarly distinguishes between the claimed "arrangement" and the claimed "method,"
explaining that that "[t]he present application discloses [1] an arrangement and [2] method for
auscultation training." (R. 54-1, '141 Patent, at col. 1 ll. 41-42.) This is thus not a situation in which the
applicant acted as his own lexicographer by idiosyncratically using the term "arrangement" to refer to a
process or method. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002)
("[A]n inventor may choose to be his own lexicographer if he defines the specific terms used to describe
the invention[.]"). In context, it is clear that the applicant used "arrangement" to refer to something other
than a method.

[when] a buyer or user of the apparatus later performs the claimed method of using the apparatus." *IPXL Holdings, L.L.C.*, 430 F.3d at 1384. "Numerous district courts have described this rule of law . . . as a narrow one," however, "with the general understanding that the rule does not apply to claims containing language simply describing a system as well as the capabilities of the claimed system; rather, the rule applies to claims describing a system that also require the user of the recited system to take specific action." *Edgewell Pers. Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*, No. CV 15-1188, 2017 WL 1900736, at *5 (D. Del. May 9, 2017) (citation and internal quotation marks omitted); *see also UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 826-27 (Fed. Cir. 2016) (reversing district court's ruling that claims were indefinite for being directed to "both an apparatus and a method for using that apparatus," holding that functional language in the claims merely "reflect the capability of the claimed apparatus").

In *IPXL Holdings, L.L.C.*, for example, the Federal Circuit held that an apparatus claim reciting "wherein . . . the user uses the input means to either change the predicted transaction information or accept the displayed transaction type and transaction parameters" was indefinite under Section 112 because it "recite[d] both a system and the method for using that system." *IPXL Holdings, L.L.C.*, 430 F.3d at 1384. The court reasoned that, in light of the "wherein" clause, "it is unclear whether infringement . . . occurs when one *creates* a system that allows the user to [use the input means as described], or whether infringement occurs when the user *actually uses* the input means [as described]." *Id.* (emphases added). Likewise, in *In re Katz*, the Federal Circuit held that apparatus claims reciting "interface means for providing automated voice messages . . . to certain of said individual callers, *wherein said certain of said individual callers digitally enter data*" were indefinite under Section 112 for the same reason. *In re Katz*,

639 F.3d at 1318 (emphasis added). The court reasoned that the "wherein" clause was "directed to user actions, not system capabilities," insofar as it recited "actions performed by 'individual callers,'" and concluded that the claim "f[e]ll squarely" within the rationale of *IPXL Holdings*. *Id.* More recently, in *H-W Technology, L.C.*, the Federal Circuit similarly held that an apparatus claim reciting "wherein said user completes a transaction with at least one of said merchants listed without the need to generate a voice call" and "wherein said user selects one of said variety of offers associated with said one of said merchants listed" was indefinite because these two limitations constituted method steps for using the claimed apparatus. *H-W Tech., L.C.*, 758 F.3d at 1335-36. The court compared this claim language to that in *IPXL Holdings* and *In re Katz* and concluded that it "falls squarely" within the holdings of those cases. *Id.* at 1336.

Although the rule of *IPXL Holdings*, *In re Katz*, and *H-W Technology, L.C.* is a "narrow one," *Edgewell Pers. Care Brands, LLC*, 2017 WL 1900736, at *5, the Court concludes that claim 1 of the '141 Patent falls squarely within the rule of those cases. The pertinent claim language reads:

1. An arrangement for auscultation training, comprising:

> a signal generator capable of generating an audio signal representing at least one sound, the signal generator being controlled by a human operator, *wherein the human operator plays one or more appropriate audio files according to a user's placement of a stethoscope headpiece on a patient*;
>
> a transmitter associated with the device for transmitting an audio signal corresponding to the at least one sound;
>
> . . . .

(R. 54-1, '141 Patent, at col. 5 ll. 54-60 (emphasis added).) Just like the claim language at issue in *IPXL Holdings*, *In re Katz*, and *H-W Technology, L.C.*, claim 1 is an apparatus claim but includes a "wherein" clause that expressly recites user actions. The claim first identifies a "human operator" as a user of the claimed apparatus by reciting "the signal generator being controlled by a human operator," then expressly requires user action by reciting "wherein the human operator plays appropriate audio files according to a user's placement of a stethoscope headpiece on a patient." *Compare H-W Tech., L.C.*, 758 F.3d at 1335-36 (apparatus claim recited method steps of "wherein said user completes a transaction" and "wherein said user selects one of said variety of offers"); *In re Katz*, 639 F.3d at 1318 (apparatus claim recited method step of "wherein said certain of said individual callers digitally enter data"); *IPXL Holdings, L.L.C.*, 430 F.3d at 1384 (apparatus claim recited method step of "wherein . . . the user uses the input means). In light of this wherein clause, it is genuinely "unclear whether infringement . . . occurs when one creates a system that allows" the human operator to play audio files according to the placement of a stethoscope headpiece on a patient, "or whether infringement occurs when the

27

[human operator] actually uses" the claimed system to do so.[13] *IPXL Holdings, L.L.C.*, 430 F.3d at 1384.

The italicized claim language is not merely functional language used to "reflect the capability of the claimed apparatus," which might otherwise save it from the rule against hybrid claims. *UltimatePointer, L.L.C.*, 816 F.3d at 826-27. Limitations that merely "reflect[] the capability of th[e] [recited] structure rather than the activities of the user" do not render a claim indefinite under this rule. *Id.* at 827; *see also Edgewell Pers. Care Brands, LLC*, 2017 WL 1900736, at *5 ("[T]he rule does not apply to claims containing language simply describing a system as well as the capabilities of the claimed system[.]" (citation omitted)). The wherein clause in claim 1 does not simply explain what the claimed "arrangement" allows or should allow the human operator to do; it expressly requires the human operator to take action, *i.e.*, "play[] one or more appropriate audio files according to a user's placement of a stethoscope headpiece on a patient." *See Meetrix IP, LLC v. Citrix Sys.*, Inc., No. 1:16-CV-1033, 2017 WL 5986191, at *8-9 (W.D. Tex. Dec. 1, 2017) (holding apparatus claim to a "system for adding a telephone participant to a multi-participant audio-video conference" indefinite under Section 112 for reciting method steps of "one or more of the participants communicating in the multi-participant video conferences," "wherein the telephone participant provides a conference ID information," and "wherein the telephone participant speaks in the video conference," rejecting patentee's argument that these limitations "merely describe[] the capabilities of the claimed system" and finding that the limitations "only indicate[] user action" rather than system capabilities); *Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, 2015 WL 7295436, at *4-

---

[13] Indeed, the fact that the parties can in good faith dispute whether claims 1-11 are apparatus or method claims underscores the Court's conclusion. *See In re Nuijten*, 500 F.3d at 1354 n.3 ("Of course, a claim that is so unclear as to be ambiguous about whether it covers a process or a machine might be invalid [as indefinite under] under 35 U.S.C. § 112 ¶ 2[.]").

5 (D. Del. Nov. 18, 2015) (holding apparatus claims reciting "brew baskets being inserted into the location in the beverage brewing machine," "the brew baskets being individually inserted into the location during an associated brewing operating," and "the brewing machine heating water" invalid as indefinite under Section 112, concluding that "a person of ordinary skill in the art would not understand whether the claims . . . are infringed by an apparatus capable of heating water and having brew baskets inserted or when a person actually *uses* the beverage brewing system to heat water and inserts a brew basket" (emphasis added)); *Ariba, Inc. v. Emptoris, Inc.*, No. Civ. A. 9:07-CV-90, 2008 WL 3482521, at *6-8 (E.D. Tex. Aug. 7, 2008) (holding that apparatus claims to a "[a] bidding device operated by a potential seller during an on-line electronic auction" were indefinite under Section 112 for reciting the method step "wherein a bid submitted by the potential seller operating the bidding device is compared to the corresponding bid ceiling of the potential seller operating the bidding device," which was not "merely functional language in an apparatus claim" because "the step in question is performed by a different computer, operated by a potential buyer, or the buyer's auctioneer"), *aff'd*, No. 2009-1230, 2010 WL 55625 (Fed. Cir. Jan. 8, 2010). Plaintiff does not argue to the contrary—indeed, in arguing that claim 1 is a method claim rather than an apparatus claim, Plaintiff appears to agree, stating that "[c]laim 1 requires the human operator . . . to play one or more appropriate audio files, and generate an audio signal, according to a user's placement of a stethoscope headpiece on a patient[.]" (R. 144, Pl.'s Resp. at 13; *see also id.* at 13-14 ("[T]he claim requires . . . the human operator to control the signal generator and play one or more appropriate audio files according to a user's placement of a stethoscope headpiece on a patient.").) Tellingly, claim 1 does recite a capability limitation elsewhere—namely "a signal generator *capable of* generating an audio signal"—but by contrast does not use the same or similar language in reciting the

actions of the human operator, making clear that the human-operator limitation refers to action, not just capability. *See Meetrix IP, LLC*, 2017 WL 5986191, at *9 (relying on "[c]omparison with other claims" to show that disputed claim limitation was "directed to user action" and rendered claim indefinite under Section 112, explaining that other claims "contain[] functional language indicating system capability, but such language is conspicuously absent from" the disputed limitation). Because claim 1 recites an apparatus as well as a method step of using the apparatus, it is indefinite under Section 112. *See H-W Tech., L.C.*, 758 F.3d at 1335-36; *In re Katz*, 639 F.3d at 1318; *IPXL Holdings, L.L.C.*, 430 F.3d at 1384.

Accordingly, the Court holds that claim 1 of the '141 Patent is invalid as indefinite under Section 112. Claims 2-11 are indefinite for the same reason because, by definition, they incorporate the same method-step limitation from claim 1 requiring action by a "human operator." *See* 35 U.S.C. § 112 ¶ 4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.").[14]

### E. Non-infringement

The remainder of Defendant's motion seeks summary judgment of non-infringement on various grounds. The Court is not persuaded that Defendant's brief and conclusory arguments—each comprising just half a page and, for the most part, citing no legal authority—meet its burden of demonstrating the absence of any genuine issue of material fact and entitlement to judgment as a matter of law as to non-infringement.

---

[14] Section 112 was amended by the Leahy-Smith America Invents Act ("AIA"), effective September 16, 2012. AIA, Pub. L. No. 112-29 §§ 4(c), 4(e), 125 Stat. 296-97 (2011). Because the application resulting in the '141 Patent was filed before that date, the pre-AIA version of Section 112 is applicable here. *See* Pub. L. No. 112-29 § 4(e), 125 Stat. 297 ("The amendments made by this section . . . shall apply to any patent application that is filed on or after [September 16, 2012].");  *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1290 n.3 (Fed. Cir. 2014) ("Because the applications resulting in the patents at issue in this case were filed before [September 16, 2012], we refer to the pre-AIA version of § 112."). Nevertheless, no substantive change was made to Section 112 ¶ 4; it was merely renumerated as Section 112(d). AIA § 4(c)(4).

Defendant first contends that it is entitled to summary judgment on the question of infringement because Plaintiff has failed to identify, in its Final Infringement Contentions, any specific person as the direct infringer to support its claims of indirect infringement. (R. 133, Def.'s Mem. at 4-5.) Plaintiff responds that it need not identify any specific direct infringer, and that circumstantial evidence of direct infringement is sufficient to support a claim of indirect infringement. (R. 144, Pl.'s Resp. at 3-4.) Plaintiff asserts only indirect infringement under 35 U.S.C. § 271(b)-(c), (R. 133-1 at 10, Pl.'s Final Infringement Contentions at 2-3), and "[i]ndirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement," *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Regarding direct infringement, Plaintiff states in its Final Infringement Contentions that the asserted claims "are directly infringed by users of the S-Scope when the S-Scope is used according to the instructions provided by [Defendant]." (R. 133-1 at 10, Pl.'s Final Infringement Contentions at 22.) Although Plaintiff does not specifically identify any direct infringers by name or otherwise, "a plaintiff's indirect infringement claims can succeed at trial absent direct evidence of a specific direct infringer," and the Federal Circuit "has upheld claims of indirect infringement premised on circumstantial evidence of direct infringement by unknown parties." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). The Court is therefore not persuaded that Defendant is entitled to summary judgment on this basis.

Defendant next contends that it is entitled to summary judgment of no contributory infringement because the accused S-Scope has at least four substantial non-infringing uses.[15] (R. 133, Def.'s Mem. at 5-6.) A party is not liable for contributory infringement under Section 271(c) if the allegedly infringing product is "a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Plaintiff disputes that Defendant's proffered uses are non-infringing to begin with or that they are "substantial" within the meaning of Section 271(c). (R. 144, Pl.'s Resp. at 4-5.) Non-infringing uses are substantial when "they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). The substantiality of non-infringing uses is a question of fact. *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1579 n. 12 (Fed. Cir. 1987); *Copan Italia S.p.A. v. Puritan Med. Prods. Co.*, No. 1:18-CV-00218, 2018 WL 5891742, at *5 (D. Me. Nov. 9, 2018). "[T]he inquiry focuses on whether the accused products can be used for purposes *other than* infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d at 1338. The Court concludes that genuine factual issues remain and that Defendant is not entitled to summary judgment of no contributory infringement. Defendant has not explained in its half-page argument how the four purported non-infringing uses are in fact non-infringing, and Plaintiff has submitted evidence that Defendant's marketing materials do not teach or describe any of these uses, (*see* R. 145, Pl.'s Add'l Facts ¶ 9), which is sufficient to create a triable issue on whether those uses are substantial. *See Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1300, 1311-13 (M.D. Fla. 2006) (denying accused

---

[15] As Plaintiff correctly points out, (R. 144, Pl.'s Resp. at 4-5), this argument applies only to Plaintiff's claims of contributory infringement under Section 271(c). It could not apply to Plaintiff's induced infringement claims because Section 271(b), which covers induced infringement, contains no exclusion for staple articles with substantial non-infringing uses. Accordingly, "[t]he existence of a substantial non-infringing use does not preclude a finding of inducement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012).

infringer's motion for summary judgment of no contributory infringement based on allegedly substantial use of accused product to perform non-infringing non-sinus surgery where accused infringer's marketing materials only identified using the product to perform sinus surgery). Accordingly, the Court denies Defendant's motion for summary judgment of no contributory infringement.

Last, Defendant argues that summary judgment is warranted on Plaintiff's induced infringement claim because it relied on the advice of its counsel that the S-Scope did not infringe the '141 Patent, and therefore, it could not have the necessary intent to knowingly induce infringement under Section 271(b). (R. 133, Def.'s Mem. at 6.) Liability for induced infringement under Section 271(b) requires that the alleged indirect infringer "actively induce[]" direct infringement. 35 U.S.C. § 271(b). However, the existence of an opinion of counsel does not *per se* preclude a finding of induced infringement. *See Mentor H/S, Inc. v. Med. Device All., Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001) (reversing judgment as a matter of law of non-infringement, holding that substantial evidence supported jury's verdict on patentee's claim of induced infringement, notwithstanding "[defendant's] assertion that it relied in good faith on an opinion of counsel"); *Gubb v. P&M Servs., Inc.*, No. 04-72432, 2006 WL 2559794, at *5 (E.D. Mich. Sept. 1, 2006) (denying accused infringer's motion for summary judgment of no induced infringement, concluding that "[a]lthough [the accused infringer] claims to have acted only upon the advice of his counsel, this is only one factor to consider when seeking to determine if he intended to induce an infringement of the patent"). Accordingly, the Court denies Defendant's motion for summary judgment of non-infringement.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (R. 130) is granted in part and denied in part, and Defendant's cross-motion for summary judgment (R. 132) is granted in part and denied in part. The parties shall appear for a status hearing on December 5, 2018, at 9:45 a.m. to discuss what remains of this case in light of this Court's rulings and to set a firm trial date. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: November 20, 2018**